**PETROLEUM ANCHOR EQUIPMENT, INC.,**
Appellant,

v.

William D. TYRA, Sr., et ux., Appellees.

No. 16491.

Court of Civil Appeals of Texas.

Dallas.

Nov. 25, 1966.

Rehearing Denied Dec. 23, 1966.

Burford, Ryburn & Ford, Spencer C. Relyea, and John L. Estes, Dallas, for appellant.

Baker, Jordan, Shaw & Foreman, Russell M. Baker, and Edwin L. Davis, Dallas, for appellees.

### CLAUDE WILLIAMS, Justice.

Action by Petroleum Anchor Equipment, Inc., against William D. Tyra and wife, Dorothy B. Tyra, seeking equitable relief by way of injunction and cancellation of two written instruments designated as Assignments of Application for Letters Patent covering an invention described as a screw type earth anchor and pipeline saddle, a device utilized in anchoring pipelines laid in marshy terrain. The essential facts and material pleadings are set forth in our original opinion in this case. Petroleum Anchor

Equipment, Inc. v. Tyra, Tex.Civ.App., 392 S.W.2d 873. In that opinion we held that the cause should be reversed because of the absence of an indispensable party, Luther S. Fite. The Supreme Court disagreed holding that Fite was a "conditionally necessary party" but not an indispensable party. Petroleum Anchor Equipment, Inc. v. Tyra, Sr., et ux., Dorothy B. Tyra, Tex. Sup.Ct., 406 S.W.2d 891. The case has been referred back to us for consideration of the points advanced by appellant.

In response to special issues the jury found (1) that the Board of Directors of Petroleum Anchor Equipment, Inc., did not pass the resolution on or about January 8, 1963 (being a corporate resolution authorizing W. A. Moss, as President and General Manager to purchase and sell property of the corporation); (2) that the Application for Letters Patent constituted substantially all of the property and assets of Petroleum Anchor Equipment, Inc., on February 14, 1963; (3) that consideration did not pass to Fite when he transferred the Application for Letters Patent to Petroleum Anchor Equipment, Inc., on April 7, 1962; (4) that the Board of Directors of Petroleum Anchor Equipment, Inc., after January 8, 1963 were informed as to the contents of the instrument identified as "Plaintiff's Exhibit 18" (being the corporate resolution inquired about in Special Issue No. 1); (5) that the Board of Directors of Petroleum Anchor Equipment, Inc., after learning of the contents of Plaintiff's Exhibit No. 18" failed to act as ordinary prudent persons would have acted under the same or similar circumstances.

Based upon this verdict the trial court rendered judgment against appellant, thereby decreeing title and ownership of the Application for Letters Patent to vest in appellees.

Appellant assails the judgment in twelve points of error. Appellees have objected to our consideration of appellant's points because same are too general, do not point out the particular error complained

of, and are multifarious. Appellant's points are indeed, broad, general and often multifarious. But we have elected to consider appellant's points as we understand them and as disclosed in the statements and arguments accompanying same. Moore & Moore Drilling Co. v. White, Tex.Civ.App., 345 S.W.2d 550; Red Fish Boat Co. v. Jarvis Press, Inc., Tex.Civ.App., 361 S.W. 2d 588.

■ Appellant's first and second points complain of the action of the trial court in submitting to the jury Special Issue No. 3 and in not disregarding the jury's answer thereto because there was no evidence, or insufficient evidence, to support the jury's answer thereto. The issue under attack inquired whether consideration passed to Fite from Petroleum Anchor Equipment, Inc., for the transfer of the Application for Letters Patent on or about April 7, 1962. The jury answered that "Consideration did not pass" to Fite.

Appellant's "no evidence" or "insufficient evidence" points require a careful review of material evidence on the question in the light of the familiar rules promulgated by our Supreme Court. The facts material to the resolution of the question, as well as other points discussed hereafter, are somewhat complex and do not yield to a simple statement.

Prior to 1960 W. A. Moss was Vice-President and Division Manager of A. B. Chance Company of Centralia, Missouri, which company manufactured and sold a type of utility anchor used to overcome buoyancy in pipelines laid in marshy areas. Joe Gardner was a salesman for Chance. Moss resigned from A. B. Chance Company and approached Joe Gardner with the idea of forming a new company to sell pipeline anchors. Moss and Gardner, whose home was Natchez, Mississippi, approached the stockholders of Natchez Steel Products (hereinafter called Natchez), a manufacturing corporation located in Natchez, with the idea of manufacturing the anchors. Prior to leaving Chance, Gardner had, on

several occasions, discussed technical improvements of the Chance anchor with Luther S. Fite, then president of Natchez, and several of the improvements suggested by Fite were actually used in the new anchor. Fite was not only president but the owner of one-third of the stock of Natchez, which company was not in too good financial condition at the time. The stockholders of Natchez desired to take on the new endeavor and it was agreed that Natchez would manufacture the anchors and that a new corporation, Petroleum Anchor Equipment, Inc. (hereinafter called Petroleum), would be formed to sell the anchors.

On June 30, 1960 Petroleum was incorporated and of the original 2,000 shares, 500 shares were issued to Moss, 500 shares to Gardner, and 1,000 shares issued to Natchez. The testimony relating to the formation of Petroleum is undisputed. However, a great deal of the testimony concerning the affairs of the corporation after its formation is conflicting. Especially conflicting is the evidence concerning the acquisition by Petroleum of the Application for Letters Patent in question covering what is commonly referred to in the record as the "Natchez" or "Saddle" anchor. Fite claims sole credit for the idea of the new anchor which appears to be an adaptation of the Chance anchor. An Application for Letters Patent covering the anchor was filed by Fite with the United States Patent Office in Washington on October 20, 1960. Subsequently, on June 22, 1961 and again on April 7, 1962, Fite executed assignments of this application to Petroleum. The assignment dated June 22, 1961 did not contain a description of the patent and was never recorded with the Patent Office. Fite testified that on and prior to June 22, 1961 he and Natchez had judgments pending against them and that he was asked by Gardner to transfer the Application for Letters Patent to Petroleum to keep the property out of the reach of his creditors. He further said that he was promised that the assignment would not be recorded but would be held

in trust for him. He said that no consideration of any kind was paid to him for this assignment. Following the 1961 assignment Fite incurred additional judgments against him. He testified that he was approached by Gardner and persuaded to execute a second assignment to Petroleum on April 7, 1962. He related that this assignment was to be curative of the first so as to supply the necessary description of the patent application. Fite testified that, like the first assignment, this one was to be held in trust by the corporation and no consideration passed to him. The second transfer was recorded with the Patent Office on April 17, 1962.

N. L. Carpenter, the original treasurer of Petroleum, as well as two other officers of the corporation, Truly and Foreman, testified that upon the formation of the corporation Fite had agreed that the corporation should have title to the application and that the two assignments were in furtherance of that agreement.

Foreman testified that Fite agreed to transfer the Application for Letters Patent covering the Natchez anchor to Petroleum because he would benefit by any increased profits accruing to Natchez from the manufacture and sale of the Natchez anchor. Truly testified that Petroleum owed Natchez approximately $750 for expenses incurred in connection with the development of the anchor, and in addition, that it expended over $200 in legal fees relating to the Application for Letters Patent.

At the time of the second transfer to Petroleum on April 7, 1962 Fite was not in a supervisory capacity with Natchez nor was he a stockholder in that company. At that time he was not a stockholder or a director in Petroleum. He received no compensation for his services from Petroleum. Truly testified that Petroleum did not at any time promise to pay Fite any royalty for his patent application. Petroleum has sold over $300,000 in Natchez anchors. It is undisputed that Fite has not received any royalty or other remuneration from this transfer.

There are no pleadings nor evidence that Fite made a gift of the application to Petroleum.

Moss substantiated Fite's testimony concerning the judgments against Fite and against Natchez, and the fact that Petroleum was to hold title to the Natchez patent in trust for Fite. Moss later, while acting as president of Petroleum, transferred the patent of the Natchez anchor to Fite because he said "from a standpoint of principle, I thought this was Mr. Fite's property and should be returned to him."

Appellant relies heavily on the argument that consideration to Fite is demonstrated by the record as a matter of law and therefore a fact issue should not have been presented to the jury. An examination of the record, as above summarized, refutes this argument.

Appellant's "no evidence" or "insufficient evidence" points must be overruled on the basis of the record. Clear-cut issues of fact were presented, supported by adequate evidence, and such facts were resolved against appellant by the jury. Appellant concedes that Fite received no money or property as consideration for the assignment, other than possibly advancements of expenses in connection with the application. In this connection Fite admitted that some of the expenses were paid for by Natchez but that same were charged to his account. Appellant concedes also that any expectation on the part of Fite to receive profits as a result of the assignment were not fulfilled. We believe that when the record is viewed in its entirety that appellant's points 1 and 2 are without merit.

█ In its second group of points appellant says that even if Issue No. 3 is supported by evidence the answer thereto should be disregarded because: (a) the presence or absence of consideration of the contract is immaterial; (b) there is no jury

finding that Fite's earlier assignment dated June 22, 1961 was not supported by consideration; and (c) there are no pleadings to support the submission of Special Issue No. 3.

We cannot agree with appellant's contention that consideration is unnecessary or immaterial. One of the fundamental rules of the law of contracts is that which declares that every contract must be supported by consideration. 13 Tex.Jur.2d, Contracts, § 41, p. 167. Appellees alleged defensively that there was no consideration for the transfer of the application and such plea amounted to a contention that the assignment never became valid in the first instance. Nat'l Bank of Commerce v. Williams, 125 Tex. 619, 84 S.W.2d 691 (1935). It is well settled that for an instrument to operate as an assignment of a patent, or an interest therein, that the same must be supported by valuable consideration. 69 C.J.S. Patents § 231, p. 746.

■ We see no merit in appellant's contention that its ownership of the assignment is predicated upon the instrument dated June 26, 1961. As shown above, this instrument could not be legally regarded as an assignment of a patent application since it obviously falls short of the requirement of the federal statutes with respect to such application. Title 35, Sec. 261, F.C.A. The instrument does not adequately define the invention and bore no patent application number which would make it susceptible of identity as contemplated by the patent laws. Moreover, the plaintiffs themselves obviously did not consider the first instrument sufficient for they entered into the second assignment inquired about by the court in Special Issue No. 3, dated April 7, 1962. This instrument was complete and in accordance with the patent laws. We think that these two instruments, under the record here made, are controlled by the rule of law which provides that where two instruments are made, even at different times, as a part of one transaction, they will be considered together. Board of In-surance Commissioners v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803.

■ Appellant's final assault in these points based upon lack of pleadings must likewise be overruled. Appellant's argument is that appellees' failure to verify their pleadings of want of consideration forecloses any question of consideration being presented to the jury. While it is true that appellees did not verify their pleading of lack of consideration of the assignment of patent rights, this defect in the pleading was not raised by special exception. The defect was presented for the first time in appellant's motion for judgment *non obstante veredicto*. Rule 90, Vernon's Texas Rules of Civil Procedure, provides that every defect, omission or fault in a pleading which is not specifically pointed out by motion or exception in writing and brought to the attention of the trial court before the charge is read to the jury is deemed to have been waived. Shaw v. Porter, Tex.Civ.App., 190 S.W.2d 396; Helms v. Day, Tex.Civ.App., 215 S.W.2d 356; Texoma Broadcasting Co. of Wichita Falls v. Darter, Tex.Civ.App., 296 S.W.2d 277.

Appellant's points 3 and 4 are overruled.

By its points 5 through 11, grouped for presentation, appellant complains that the trial court should not have submitted Special Issue No. 4 or should have disregarded the jury's answer thereto. As to Special Issue No. 5 appellant says that the trial court should not have submitted the same or should have disregarded the jury's answer thereto and that such answer is not supported by any evidence or the evidence is insufficient to support same. In its eleventh point appellant says that the trial court erred in "overruling plaintiff's objections and exceptions to the charge of the court as a whole."

■ We overrule appellant's eleventh point for the reason that the same is obviously too broad and too general and there

is nothing in the argument contained thereunder to indicate the specific point relied upon.

 While appellant's points 5 through 10 are extremely general we gather from the statement thereunder that they are primarily directed towards appellees' defense of estoppel. On February 14, 1963 Moss, as president of Petroleum, executed a bill of sale of the Application for Letters Patent covering the Natchez anchor to Fite. On March 7, 1963 Fite conveyed the application to appellees. Appellees defend their contention of ownership upon the proposition that the bill of sale by Moss was authorized by and pursuant to the resolution passed by the Board of Directors at its January 8th meeting. The jury found that this resolution was not, in fact, passed. Even so, appellees contend that because the directors of Petroleum did not act promptly to rescind the resolution, nor did it act at all until July 11, 1963, appellant corporation was estopped from asserting the invalidity of the transfer of the assignment.

The record is in dispute concerning the passage of the January 8, 1963 resolution granting Moss comprehensive powers relating to the corporate property and also concerning the knowledge of the corporate officers concerning such resolution and the minutes of the corporation dealing therewith. Moss testified that shortly after the meeting of January 8, 1963 he prepared the minutes of the stockholders' meeting as well as directors' meeting reflecting action concerning the resolution and that he, on February 15, 1963, submitted same to Mr. Foreman, secretary of the corporation, for his signature, and that Foreman executed the minutes in his presence. The resolution itself bore the signature of Mr. Foreman and Moss testified that he had this instrument photostated on February 15, 1963. Foreman testified that the first time he saw the resolution of January 8, 1963 was shortly before the July 11, 1963 meeting of the Board of Directors.

It is undisputed that the transfer of patent application from Moss, as president of Petroleum, to Fite was executed on February 14, 1963 and this instrument has attached to it a copy of the resolution of the Board of Directors of January 8, 1963 signed by both Moss, as president, and Foreman, as secretary. This instrument was not recorded in the United States Patent Office until March 21, 1963. On March 7, 1963 Fite assigned the application to appellees, said instrument being recorded in the United States Patent Office on April 11, 1963.

Foreman testified that in the early part of June 1963 he was advised of the transfer of the patent application from Petroleum to Fite. Appellant corporation also was informed of the transfer of title to appellees in June 1963. Board of Directors' meetings of the appellant corporation were held on March 21, 1963 and on March 29, 1963, but it was not until the meeting of the board on July 11, 1963 that the directors of appellant corporation adopted a resolution rescinding the prior resolution of January 8, 1963. On September 13, 1963 appellant filed suit against appellees alleging a conspiracy between Moss, Fite and William D. Tyra and asking cancellation of the assignments. Prior to presentation of evidence appellant abandoned its contention of conspiracy as related to the Tyras and no evidence of such conspiracy was tendered.

In answer to Special Issues Nos. 4 and 5 the jury found that the Board of Directors of appellant corporation had knowledge of the resolution of January 8, 1963 and that after learning of the contents of said resolution it failed to act as ordinary prudent persons would have acted under the same or similar circumstances. Our examination of the record reveals ample evidence to support the jury's answers to these issues.

Appellant's sole argument under these points is that the doctrine of estoppel is not applicable under these facts. It is con-

tended that there is no proof or jury finding that appellees relied upon any statement or representation made by appellant to their loss or damage in purchasing the application.

■ A purchaser of a patent has a right to rely on the record title thereto. 48 C. J., Patents, § 233, p. 250. The record is undisputed that at the time appellees placed their bill of sale to the patent application on record with the United States Patent Office that such office records revealed title into Fite. The record is also undisputed that at the time appellees purchased the application from Fite and recorded same Fite's title thereto was supported by an unchallenged resolution of the Board of Directors of appellant corporation executed by the president and secretary. Obviously what appellees relied upon was the recorded conveyance from appellant to Fite and the fact that no attack had been made by appellant corporation upon the sale to Fite.

■ The doctrine of estoppel will apply against the real owner of personal property where he clothes the person assuming to dispose of the property with the apparent title to it or with apparent authority to dispose of it. When one acts or parts with value or extends credit on the faith of such apparent ownership or authority he may invoke the equitable doctrine of estoppel. 19 Am.Jur., Estoppel, § 68, p. 696.

■ Based upon conflicting evidence the jury was justified in finding that while the January 8, 1963 resolution was not actually passed by the Board of Directors of the corporation, yet the corporation, through its officers, was made aware of the existence of such resolution and thereafter failed to act as ordinary prudent men would have acted under the same or similar circumstances. In the state of this record we find a classic illustration of the applicability of the doctrine of equitable estoppel. As this court held in Knowles v. Northern Texas Traction Co., 121 S.W. 232:

"A corporation, like an individual, is bound by the acts of its agent, expressly or impliedly authorized by it. It may become bound by a ratification of unauthorized acts of its agents without any formal action for that purpose by its board of directors. It may ratify by passive acquiescence as well as by affirmative action. Its acquiescence, with knowledge, proven or which should be inferred, if continued for a considerable time, will operate as a ratification. When knowledge is brought home to the corporation of the unauthorized acts of its agent, it must promptly disavow it, otherwise, it will be held to have ratified the unauthorized act and so to have made it its own."

The facts related above illustrate that the corporation had knowledge of the questioned resolution in February of 1963, and further, had knowledge, in June of 1963, relating to the assignments of the patent application but it was not until September 13, 1963 that legal redress was sought against appellees. Such action negates the idea of prompt disavowal of unauthorized acts of corporate agent.

Our Supreme Court in Johnson v. Sovereign Camp, 125 Tex. 329, 83 S.W.2d 605, pointed out that estoppel may arise from misleading, although innocent, silence, coupled with a duty to speak. Again, in Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, the Supreme Court reiterated the rule that an estoppel maye arise when one is induced to act to his injury on account of the silence of one interested in a transaction, or when such course of action is permitted with a knowledge of the interested party or induced by silence or a tacit acquiescence.

■ It is true, as pointed out by the court in Alco Oil v. Concord Oil, Tex.Civ. App., 375 S.W.2d 463, that for the doctrine of estoppel to be applied on the basis of silence or inaction, there must be some element of turpitude or negligence connected with the silence or inaction by which the

other party is misled to his injury. The jury in this case, based upon adequate evidence, found that there was negligence on the part of the appellant corporation in its actions following knowledge of the January 8, 1963 resolution.

We believe that the application of the doctrine of equitable estoppel as applied here is further strengthened by the element of ratification. 12 C.J.S. Cancellation of Instruments § 37, p. 995. As stated there the question of estoppel most often arises by reason of plaintiff's acts or his inactivity whereby he is to be considered to have ratified a contract which he might otherwise have cancelled and is thereby estopped to claim a cancellation. The ratification need not be express in order to defeat cancellation but any acts of recognition of the contract or any conduct inconsistent with an intention of avoiding it, have the same effect of an election to affirm. 12 C.J.S. Cancellation of Instruments § 38, p. 996.

Finally, in connection with these points, we agree with appellees that appellant having failed to show that appellees were in a better position than it to have prevented the transfer of said patent application, appellant should bear the loss. The rule is well stated in 10 Tex.Jur.2d, Cancellation of Instruments, § 55, pp. 390–391, as follows:

"Where a third party has acquired an interest in the subject matter of the agreement sought to be rescinded, and where it appears that, as a consequence of the plaintiff's suit for cancellation, a loss must fall either on the plaintiff himself or on the third party, the rule to be applied is that which declares that if one of two or more innocent persons must suffer a loss, it must be borne by the party who was best situated to foresee it and prevent it from occurring. For example, where the plaintiff sues to set aside a conveyance, but it appears that the grantee had transferred the property or an interest therein to a third party, the law will then infer that the plaintiff should have foreseen the possibility of such a transfer and taken timely steps to have prevented it."

In Lloyds Casualty Insurer v. Farrar, Tex.Civ.App., 167 S.W.2d 221, following the earlier case of Parma v. First Nat'l Bank of Cameron, Tex.Com.App., 63 S.W. 2d 692 (Syl. 2), the court invoked the doctrine of estoppel, saying:

"When one of two persons equally entitled to consideration must suffer from delinquency of third person, loss falls upon him who, having readily at hand means of protection, fails to avail himself of them."

We think the facts in this case justify an application of this rule. Although charged with conspiracy and knowledge of alleged wrongdoings between Moss and Fite, the Tyras were voluntarily released from such charges and there is no evidence that they knew or participated in any such alleged manipulations. On the other hand, the facts reveal, and the jury found, that the appellant corporation had within its possession knowledge of all of the facts at a time when it could, by prompt disavowal, have acted to undo the alleged wrongdoings between Moss and Fite. This the corporation did not do but remained silent for an inordinate period of time so that it may not now be heard to seek equitable relief.

Appellant's points 5 through 11, inclusive, are overruled.

By its twelfth and last point of error appellant contends that the court erred in entering judgment for appellees based upon the finding that "plaintiff has failed to sustain the material allegations in its pleadings in that there is no evidence of a conspiracy between W. A. Moss, Luther S. Fite and defendants." Appellant argues

that while it is true it completely failed in its effort to connect appellees with any conspiracy with Moss or Fite yet it was entitled to cancellation of the assignments in question because Fite had no title in the application to assign to appellees.

It is a well settled rule of law that the judgment of the trial court must be sustained if it can be supported by any legal theory apparent from the record as a whole. The mere fact that the trial court made the quoted recitation in the judgment does not necessarily imply that the judgment is based solely upon such finding. Aside from appellant's failure to prove the allegations of conspiracy against appellees there is the jury finding to the effect that appellant corporation gave no consideration for the original assignment into it and also the findings relating to equitable estoppel which have been discussed above. These findings alone justify denial of recovery of the relief sought by appellant and therefore sustain the judgment rendered.

In its argument under this point appellant seeks to inject another question into the case which has not been presented by either point of error or by an assignment of error contained in the amended motion for new trial. This is the contention that the assignment from Petroleum to Fite was void under Section 79 of the Mississippi Business Corporation Act which provides that a sale or other disposition of all, or substantially all, of the property and assets of a corporation not in the regular course of business, must be authorized by an affirmative vote of two-thirds of the stockholders of the corporation after recommendation by the board of directors and written notice to the stockholders. Since this contention has not been properly presented it must be deemed to have been waived.

Having carefully considered all of appellant's points of error and finding the same to be without merit, they are overruled and the judgment of the trial court is affirmed.

Affirmed.