**SHERMAN SIMON ENTERPRISES, INC., Petitioner,**

v.

**LORAC SERVICE CORPORATION, a Wholly Owned Division of Raytheon Corporation, Respondent.**

No. C–4214.

Supreme Court of Texas.

Jan. 21, 1987.

Rehearing Denied March 4, 1987.

John H. Benckenstein, Thomas Hanna and Arthur R. Almquist, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for petitioner.

**14**

Wade Williams, Mills, Shirley, McMicken & Eckel, Galveston, for respondent.

KILGARLIN, Justice.

In this deceptive trade practices case, the jury found that Sherman Simon Enterprises, Inc., a Hertz franchisee, refused to provide liability insurance coverage after representing to its customer, an employee of Lorac Service Corporation, that an automobile rental agreement provided such coverage. Based on this finding, the trial court rendered judgment for Lorac. The court of appeals affirmed the trial court's judgment, holding, in an unpublished opinion, that Lorac was a consumer under the Deceptive Trade Practices Act and that Sherman Simon Enterprises' misrepresentation as to insurance coverage made it liable under the DTPA.

Sherman Simon Enterprises attacks the holding that Lorac was a consumer and the determination that the evidence was legally sufficient to support the jury's finding of a misrepresentation. We conclude that although Lorac is a consumer within the meaning of the DTPA, there is no evidence that Sherman Simon Enterprises made any misrepresentation in the automobile rental agreement. Therefore, we reverse the judgment of the court of appeals and render judgment for Sherman Simon Enterprises.

J.R. Davis, James Kirk, and James Westerhaus were employees of Lorac, working on board a boat in the Gulf of Mexico. On October 1, 1978, the boat was coming into a port in Jefferson County and Kirk called Lorac's supervisor of offshore personnel to find out how the men were to get home. The supervisor authorized the workers to rent a car and to drive to their homes in Galveston and Houston. After Davis, Kirk, and Westerhaus docked, Davis rented a car from Sherman Simon Enterprises at the Jefferson County Airport. Davis used a company credit card to rent the car. The charges under the rental agreement were to be billed to Seismograph Service Corporation, of which Lorac is a wholly owned subsidiary. Both are owned by Raytheon Corporation.

Davis drove the rental car, and en route to Galveston struck a car driven by Ima Peel. Kirk and Westerhaus were in the car driven by Davis. Mabel Fuller was in the car driven by Peel. Westerhaus, Davis, Peel, and Fuller were killed instantly. Representatives of Fuller's estate filed suit against Lorac, Sherman Simon Enterprises, its licensor, Hertz Corporation, and the estate of Davis. Sherman Simon Enterprises' insurer, National Union Fire Insurance Company of Pittsburgh, Pa., refused to defend Lorac. Therefore, Lorac cross-acted against Sherman Simon Enterprises, claiming misrepresentation as to insurance coverage. Hertz was granted a summary judgment and was dismissed from the suit with prejudice. Davis' estate was never served. Lorac settled by paying $100,000 to the executors and heirs of Fuller. The trial court rendered judgment that the representatives of Fuller take nothing from all defendants and ordered Lorac's cross-action against Sherman Simon Enterprises severed and made the subject of a separate suit.

We have before us only Lorac's cross-action against Sherman Simon Enterprises, which arises out of the automobile rental contract under which Davis rented the car. Lorac has not sued the insurance company. Lorac contends that Davis was acting within the scope of his employment at the time of the accident; therefore, Lorac was a consumer entitled to recovery under the DTPA. Lorac further alleges that paragraph 8 of the rental contract provided for liability insurance coverage to be furnished by Sherman Simon Enterprises, and since it refused Lorac's demand to take over and defend the suit, its acts violated both the DTPA and the Insurance Code. Sherman Simon Enterprises denies that it was liable under the insurance provision in the rental agreement.

The jury found that Sherman Simon Enterprises (1) represented the automobile rental agreement provided liability coverage for the customer in the amount of $100,000, but (2) refused to provide the coverage. There was also a finding that such acts were a producing cause of actual

damages which adversely affected Lorac. The jury further found that $100,000 would reasonably compensate Lorac for its loss. Under the DTPA, the trial court rendered judgment for Lorac in the amount of $300,000, plus attorney's fees and costs.

■ Sherman Simon Enterprises initially attacks Lorac's status as a consumer. We have recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA. In *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981), we reaffirmed the requirement that a person must qualify as a consumer as that term is defined in Tex.Bus. & Com. Code § 17.45(4) in order to maintain a private cause of action for treble damages under section 17.50 of the Act. Section 17.45(4) defines consumer as "an individual, partnership, or *corporation* who seeks or acquires by purchase or lease, any goods or services" (emphasis added). Another requirement recognized by this court is that the goods or services purchased or leased must form the basis of the complaint. *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977). Lorac has satisfied both of these requirements. It became indebted for certain services provided by the lease agreement, including rental of the car.

■ But, Sherman Simon Enterprises argues that because there was no evidence that Lorac was billed or paid for the rental car, Lorac was not a consumer. Sherman Simon and two of his employees testified that the charge under the rental agreement was billable to Seismograph from Hertz' Oklahoma City data center in accordance with the provisions of the air travel card used by Davis. It was customary for Lorac employees to use such a card to rent and pay for transportation. Furthermore, the rental agreement defines "customer" as "the persons signing this agreement and any other party to whom the charges incurred are billed at the express direction of such party or the person signing this agreement...."

Sherman Simon Enterprises stated in oral argument that it never submitted the charge receipt to Hertz for ultimate billing to Seismograph. The failure of Sherman Simon Enterprises to actually bill Seismograph poses two questions. Of what effect is the fact that the rental fee was never actually paid, and of what effect is the fact that the charge was ostensibly only billable to Seismograph?

■ The language of section 17.45(4) clearly indicates that a claimant can be a consumer under the DTPA even if the transaction is not consummated since a consumer is defined as "a *corporation* who *seeks* or acquires ... by ... lease, any goods ..." (emphasis added). *McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex.App.—Corpus Christi 1984, no writ); *Dickson Distributing Co. v. LeJune*, 662 S.W.2d 693 (Tex.App.—Houston [14th Dist.] 1983, no writ).

■ Furthermore, a corporation can only act through its agents. It was Lorac's policy to provide transportation home to its employees after they had been working offshore. Davis used a company credit card for the rental of the automobile. Davis was acting as an agent of Lorac for the purpose of acquiring a means of transportation for Lorac's employees. *Petroleum Anchor Equipment, Inc. v. Tyra*, 410 S.W.2d 238 (Tex.Civ.App.—Dallas 1966), *reversed on other grounds*, 419 S.W.2d 829 (Tex.1967). We therefore hold that Lorac was a consumer within the meaning of the DTPA.

As a result of our determination that Lorac was a consumer, we turn to the question of what DTPA violation, if any, was committed by Sherman Simon Enterprises. Lorac alleges that Sherman Simon Enterprises misrepresented that liability insurance coverage was provided under the rental agreement.

It is true that Sherman Simon Enterprises did make a representation to Lorac. Paragraph 8 of the automobile rental agreement states that "[l]essor provides liability coverage for customer and any operator authorized by lessor in accordance with the standard provisions of a basic automobile liability insurance policy."

The evidence establishes that after Mabel Fuller's estate sued Lorac, Lorac notified Sherman Simon Enterprises and demanded it defend the suit against Lorac by Fuller's estate. Sherman Simon Enterprises thereafter notified its insurance carrier, National Union Fire Insurance Company of Pittsburg, Pennsylvania. National Union, for reasons not revealed by the record, refused to defend Lorac in the suit against them by Fuller's estate. Lorac made repeated demands on Sherman Simon Enterprises to defend it in the Fuller suit. Sherman Simon Enterprises refused, informing Lorac that National Union was its insurance carrier and providing Lorac with a copy of the policy.

At trial, Sherman Simon Enterprises introduced into evidence the basic automobile insurance policy with National Union in effect at the time of the collision. Under the terms of the policy, Lorac, through its agent/employee, Davis, was an insured entitled to enforce the terms of the policy which provided that National Union "shall have the ... duty to defend any suit against the insured." Since the coverage provided for in the National Union policy was primary as between National Union and Lorac, Lorac had a cause of action against National Union for breach of the insurance contract if all conditions precedent to its enforcement had been met. *Heyden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22, 24 (Tex.1965).

It cannot be said from the language in the rental agreement that Sherman Simon Enterprises represented that it would defend suits against Lorac or represented that they would be defended. Rather, the agreement provided that Sherman Simon Enterprises would provide coverage. The existence of the National Union policy in effect at the time of the car rental establishes that Sherman Simon Enterprises did in fact fulfill its obligation. For this reason, we hold that there was no evidence to support the jury's finding that Sherman Simon Enterprises represented to Lorac Service Corporation that the automobile rental agreement provided liability insurance coverage for the customer in the amount of $100,000, but refused to provide such. Accordingly, we reverse the judgment of the court of appeals and render judgment for Sherman Simon Enterprises.

Concurring opinion by GONZALEZ, J.

GONZALEZ, Justice, concurring.

I concur with the result in this cause because the record contains no evidence of a false, misleading or deceptive act or practice. However, I disagree that Respondents have standing to sue under the DTPA.

Only consumers may recover under the DTPA. The Act defines "consumer" as an "individual ... who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1982).

A two-prong test must be satisfied in order to qualify as a "consumer:"

(1) the plaintiff must have sought or acquired goods or services by purchase or lease; *and*

(2) the goods or services purchased or leased must form the basis of the complaint.

A plaintiff failing to establish either of these two requirements does not have standing and is relegated to pursue other remedies. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

The court glosses over the second prong of the test and concludes it has been satisfied. If this was a football game, the court would be guilty of falling for the quarterback fake and tackling the fullback—only to discover that the quarterback had kept the ball and scored on a bootleg play. The "goods or services" here are the leased vehicle and the lease agreement. There was no complaint about the vehicle. Furthermore, the lease agreement does not impose a duty on Petitioner to defend a lawsuit arising out of the use of the vehicle, nor to indemnify or hold Respondent harmless for any damages relating to the transaction. It merely represented that Petitioner would provide liability coverage and this was done. The fact that National

Union refused to defend Respondent is not Petitioner's problem. Respondent had a cause of action against National Union for failure to defend. This lawsuit was brought for the wrong cause of action against the wrong party.

For the above reasons, I concur with the result.