

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-13-00221-CV

MIKE E. DEUBLER, APPELLANT

V.

THE BANK OF NEW YORK MELLON AS SUCCESSOR TRUSTEE
UNDER NOVASTAR MORTGAGE FUNDING TRUST 2005-1,
AND SAXON MORTGAGE SERVICES, INC., APPELLEES

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-254925-11, Honorable J. Wade Birdwell, Presiding

June 15, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Mike Deubler appeals a take-nothing summary judgment in his suit against appellees the Bank of New York Mellon as Successor Trustee under Novastar Mortgage Funding Trust 2005-1 (the Bank) and Saxon Mortgage Services, Inc. Finding the trial court did not err, we will affirm its judgment.

Background

Because this is the review of a summary judgment rendered in favor of appellees, we will recite the facts presented by the summary judgment record in the light most favorable to Deubler, indulging every reasonable inference in his favor.[1]

In November 2004, Deubler signed an adjustable-rate note in the amount of $166,500 payable to First Horizon Home Loan Corporation for the purchase of a home, and a deed of trust to the property.

In July 2005, First Horizon assigned the note and deed of trust to Novastar Mortgage, Inc. Saxon serviced the loan for Novastar.

In November 2007, Novastar executed a document entitled "Limited Power of Attorney." In relevant part the instrument includes the following:

> NovaStar Mortgage, Inc. (hereinafter called "Owner") hereby appoints Saxon Mortgage Services, Inc. (hereinafter called "Servicer"), as its true and lawful attorney-in-fact to act in the name, place and stead of Owner for the purposes set forth below. This limited power of attorney is given pursuant to a certain Servicing Agreement and solely with respect to the assets serviced pursuant to such agreement by and between Owner and Servicer dated November 1, 2007, to which reference is made for the definition of all capitalized terms herein.
>
> The said attorneys-in-fact, and said person designated by the Servicer, as the attorney-in-fact, is hereby authorized, and empowered, as follows:
>
> To execute, acknowledge, seal and deliver deed of trust/mortgage note endorsements, . . . assignments of deed of trust/mortgage and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, subordinations and modifications, . . . and declarations, deeds, bills of sale, and other instruments of sale, conveyance and transfer, appropriately completed, with all ordinary or necessary

---

[1] *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam) (stating rule).

endorsements, acknowledgements, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing.

To execute and deliver . . . foreclosure deeds.

The summary judgment record contains a February 2009 document stating "Novstar (sic) Mortgage, Inc.," as the owner and holder of the note, assigns it to the Bank by its "servicer-in-fact" Saxon. The document is signed by an individual acting for "Novstar (sic) Mortgage, Inc., Saxon Mortgage Services, Inc (sic) as the Attorney in Fact."

During 2007, Deubler fell behind on payments on the note, committing an event of default under the instrument's terms. In April 2008, Saxon notified Deubler in writing that he might qualify for specified options to avoid foreclosure. The notice requested Deubler to continue making monthly payments because Saxon was unable to promise any of the options applied to his circumstances.

According to Deubler's summary judgment affidavit, from "2007 until early 2009, [he] attempted to work with [Saxon] to modify the Loan to a manageable level." Unidentified Saxon personnel directed him, as part of the modification process, to quit making payments on the loan and to concentrate on its modification. As part of the modification process, Deubler paid Saxon about $7,000 which he later learned Saxon placed in a "suspense account." A sum consisting of the $7,000 along with the loan payments Deubler was willing and able to make during the period Saxon personnel told him not to make payments, would have "brought the loan current." At some point during Deubler's dealings with Saxon, unnamed Saxon personnel told him Saxon never intended to complete a modification of the loan.

Deubler concludes his affidavit with a recount of those at Saxon he "specifically spoke with":

(a) A man named Bustamante, who was the first person at Saxon who I spoke with, who told me that whatever I paid Saxon might go into a suspense account, so please not to pay at that time because of modification efforts, since Saxon 'was being bought' (Bustamante's words). This course of communication continued in that vein over two months, substantially conveying to me the same information and instructions.

(b) Later, I spoke with a Saxon representative who was a retired military man, and I sent Saxon approximately $5,000, but received no answers from Saxon or further inquiries regarding information relevant to the modification of the Loan for over a month.

(c) Sharon Cotton of Saxon promised me that Saxon wouldn't foreclose as long as payments weren't fully settled (no funds left in a suspense account state). Ms. Cotton repeatedly advised me not to send money to Saxon until accounting on the Loan was resolved. Ms. Cotton told me that she would be out of the office through December 2008, but to call her afterward. Ms. Cotton explicitly assured me that (sic) would see to it that Saxon modified the Loan.

(d) After I received a notice of foreclosure, I attempted on several occasions to speak to Sharon Cotton, but was unable to reach her or to get her to return my calls, until finally I reached her by phone and she handed me off to another representative, which other representative asked me to submit modification documents again to Saxon (which was the fourth or fifth time, such documents having previously been fully submitted to Saxon by me three or four times).

(e) In February of 2009, Saxon personnel assured me by phone that they would hold off on any foreclosure until the accounting issues on the Loan were fully settled (no funds left in a suspense account state).

In two letters dated in August and September 2008, Saxon's counsel notified Deubler of default under the note, intent to accelerate, and an opportunity to cure. The August letter set September 14, 2008, as the deadline for cure. The September letter moved the deadline to October 17.

Three letters sent by Saxon to Deubler during May and June 2009 stated it had not received all "documents and information" necessary to complete a review of Deubler's request for assistance. The necessary documents and information were not specified. The letters contained notice that Saxon would continue efforts to collect the debt which might include foreclosure.

By correspondence dated October 2, 2009, Saxon's attorneys notified Deubler that the maturity of his loan was accelerated. The correspondence enclosed notice that his home would be sold at a substitute trustee's sale on November 3, 2009. Substitute trustees under the deed of trust were appointed by a document signed October 9, 2009. The instrument was recorded on November 9, 2009.

A substitute trustee sold Deubler's home on November 3, 2009, to the Bank as highest bidder for $146,200. Deubler filed suit on August 29, 2011, and on that day obtained a temporary restraining order enjoining the Bank, *inter alia*, from evicting Deubler. Appellees moved for summary judgment on traditional and no-evidence grounds. The trial court granted the no-evidence and traditional motions, and ordered that Deubler take nothing by his claims.

Analysis

Deubler presents two issues on appeal. His first issue contains several sub-issues challenging the sufficiency of the evidence supporting summary judgment.[2] Primarily, he contends the Bank and Saxon lacked authority to proceed with the non-

---

[2] *See Malooly Bros, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970) (point of error on appeal stating simply that trial court erred by granting summary judgment "allow[s] argument as to all the possible grounds upon which summary judgment should have been denied").

judicial foreclosure of his home, and that Saxon agreed to modify the loan but breached the agreement by failing to do so and in the process, through its agents, made actionable misrepresentations of fact.  By his second issue, Deubler contends the trial court abused its discretion by granting summary judgment at a time when additional discovery was required.

Issue I: Did the trial court err in granting summary judgment?

Standard and Scope of Review

An appellate court reviews a trial court's summary judgment *de novo*.  *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).  Summary judgment is proper if the record presents no disputed issues of material fact and the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Knott,* 128 S.W.3d at 215-16.  When reviewing a summary judgment, a court takes as true all evidence favorable to the nonmovant, and indulges every reasonable inference and resolves any doubt in favor of the nonmovant.  *Valence Operating Co.,* 164 S.W.3d at 661; *Knott,* 128 S.W.3d at 215.  If the trial court did not specify a basis for granting summary judgment, the judgment will be affirmed if any ground asserted in the motion has merit.  *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995).

On a traditional motion for summary judgment, the movant bears the initial burden of conclusively negating at least one essential element of a claim or defense on which the non-movant has the burden of proof.  TEX. R. CIV. P. 166a(c); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997).  Only if the movant

6

satisfies this burden does the burden shift to the nonmovant to produce evidence demonstrating a genuine issue of material fact as to the challenged element or elements in order to defeat the summary judgment. *See Walker v. Harris,* 924 S.W.2d 375, 377 (Tex. 1996).

A party moving for summary judgment on an affirmative defense bears the burden of conclusively proving all elements of the defense. *Integrated of Amarillo, Inc. v. Pinkston-Hollar Constr. Servs.,* No. 07-11-0422-CV, 2013 Tex. App. LEXIS 4216, at *5 (Tex. App.—Amarillo Apr. 2, 2013, pet. denied) (mem. op.) (citing *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999)).

Through a no-evidence motion for summary judgment, a movant may challenge the existence of legally sufficient evidence of one or more essential elements of a claim or defense on which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex. 2004). The nonmovant in response must present summary judgment evidence demonstrating a genuine issue of material fact concerning the element or elements challenged. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). When the movant seeks summary judgment on both traditional and no-evidence grounds, the appellate court first addresses the no-evidence grounds. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We do so because there is no need to analyze whether the movant met its burden under the traditional motion if the non-movant has failed to produce legally sufficient evidence in response to the no-evidence motion. *Id.*

The Note and Deed of Trust

As indicated, Deubler's arguments rest chiefly on his claim the Bank and Saxon lacked authority to pursue non-judicial foreclosure on his home. We cannot agree the evidence raises a genuine issue of material fact on such a claim. Deubler correctly points out that the copy of the note in the summary judgment record does not contain the indorsement of First Horizon. For that matter, it contains no indorsement. *See* TEX. BUS. & COM. CODE ANN. § 3.204(a) (West 2002) (defining "indorsement"). However, the record includes the documents of assignment transferring ownership of the note and deed of trust from First Horizon to Novastar and then from Saxon as attorney-in-fact for Novastar to the Bank.

Based only on the copy of the note included in the summary judgment record, Novastar and then the Bank do not appear as holders of the note. But this fact, if correct, did not preclude the Bank from foreclosing on Deubler's collateral. The owner of a note may enforce the note by foreclosure and deficiency judgment. *Beard v. Norwest Mortg., Inc.,* No. 10-06-00014-CV, 2007 Tex. App. LEXIS 5659, at *5 (Tex. App.—Waco July 18, 2007 pet. denied) (mem. op.); TEX. BUS. & COM. CODE ANN. § 3.301 cmt. (West 2002). Ownership of a note may be transferred by possession, even if it is not indorsed. *Id.* While the transferee in such instances does not become the holder, it nevertheless acquires the rights of the transferor. *Id. See also Martin v. New Century Mortg. Co.,* 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (explaining how a person not the holder of a note may still be entitled to enforce it as owner under the common law of assignment); *Skelton v. Urban Trust Bank, (In re Skelton)*, 516 B.R. 396, 402 (Bkrtcy. N.D. Tex. 2014) (noting a "properly effectuated

8

transfer under [Texas Business and Commerce Code] § 3.203(a) 'vests in the transferee any right of the transferor to enforce the instrument'" thus "if a person acquires an instrument from a holder who has not properly indorsed the instrument, that person will not attain holder status; but so long as the person receives the instrument via a § 3.203(a) transfer, that person will qualify as a nonholder in possession who has the rights of the holder (i.e., the transferor) to enforce the instrument"); TEX. BUS. & COM. CODE § 3.203(a) (West 2002) ("An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument") and § 3.203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course"). An issue of material fact on the issue of ownership of a note is presented by an unexplained gap in the chain of title. *Leavings v. Mills,* 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Here Deubler does not point to, nor do we see, such a gap in the note's chain of title.

Without citation of authority or elaboration, Deubler further complains the copy of the note contained in the summary judgment record is not a copy of the original note. The "show me the note" theory supposes that "only the holder of the original wet-ink signature note has the lawful power to initiate a non judicial foreclosure." *Washington v. JP Morgan Chase,* No. SA-11-CV-763-XR, 2013 U.S. Dist. LEXIS 22735, at *15 (W.D. Tex. Feb. 20, 2013) (quoting *Puig v. Citibank, N.A.,* No. 3:11-CV-0270-L, 2012 U.S.

Dist. LEXIS 70398, at *12 (N.D. Tex. May 21, 2012)).[3]  This theory has been "roundly rejected" because it does not comport with foreclosure law.  *Puig,* 2012 U.S. Dist. LEXIS 70398, at *12 (noting distinction in Texas law between non-judicial foreclosure under a deed of trust and judicial enforcement of the promissory note seeking a judgment).  Judicial enforcement of a promissory note may require production of the original note, but the Texas Property Code does not require a mortgagee pursuing non-judicial foreclosure to produce the original note.  *Id.* (quoting *Millet v. JP Morgan Chase, N.A.,* No. SA-11-CV-1031-XR, 2012 U.S. Dist. LEXIS 40890, at *10 (W.D. Tex. Mar. 26, 2012)); *see* TEX. PROP. CODE ANN. § 51.002 (West 2014) (sale of real property under a contract lien).

Deubler also claims the Bank and Saxon lacked capacity to threaten foreclosure and give pre-foreclosure notice.  Although not altogether clear, the argument seems rooted in the idea that transfers of the note were ineffective without indorsement, a theory we have resolved against Deubler.  Moreover, Deubler does not argue that any assignment of the note or deed of trust was void.  "[W]hile an obligor may defend against foreclosure on any ground which renders the assignment void, an obligor has no standing to challenge an assignee's efforts to enforce an obligation on any ground which renders the assignment voidable only."  *Blair v. Deutsche Bank Nat'l Trust Co.,* No. 14-50041 Summary Calendar, 2015 U.S. App. LEXIS 5358, at *3 (5th Cir. Apr. 2, 2015) (per curiam) (internal quotation marks omitted) (quoting *Reinagel v. Deutsche*

---

[3] While not binding, the federal cases cited are persuasive because a notable volume of home mortgage litigation in Texas is tried by federal courts applying Texas law.  *Robeson v. MERS,* No. 02-10-00227-CV, 2012 Tex. App. LEXIS 137, at *12 n.4 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.).

*Bank Nat'l Trust Co.,* 735 F.3d 220, 225 (5th Cir. 2013)). Deubler thus has no standing to complain of the sufficiency of the assignments.

Sufficiency of the Limited Power of Attorney

Deubler contends that the limited power of attorney Novastar granted Saxon in November 2007 is insufficient because it references a "servicing agreement" but does not identify the loans covered by the agreement, state whether the agreement authorizes assignment of the note, or describe what, if any, authority Saxon had to deal with the note and deed of trust. According to Deubler, "Such specificity is essential to the validity of the power of attorney and hence to the Assignment and to the subsequent instruments which followed, including the notices of default and opportunity to cure (which preceded the Assignment) and the notices of trustee's sale and appointment of substitute trustees which preceded the November, 2009 sale." This argument is but another attempt to challenge the assignment of the note and deed of trust to the Bank by contesting the authority of the transferor. Were such a claim true it would render the assignment voidable but not void. *Howard v. JP Morgan Chase, N.A.,* SA-12-CV-00440-DAE, 2013 U.S. Dist. LEXIS 54433, at *23-24 (W.D. Tex. Apr. 17, 2013). As we have already concluded, Deubler lacks standing to make such a challenge.

Unreasonable Collection

Deubler's pleadings alleged appellees committed the tort of unreasonable collection, and urges an issue of material fact exists precluding summary judgment. Under Texas law, "[u]nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). The tort "is intended to

11

deter outrageous collection techniques, particularly those involving harassment or physical intimidation." *Thomas v. EMC Mortg. Corp.,* 499 F. App'x 337, 343, 2012 U.S. App. LEXIS 24693 (5th Cir. 2012) (quotation marks omitted). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Jones,* 252 S.W.3d at 868. Actionable conduct under this tort has been described as "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Jones,* 252 S.W.3d at 868-69; *Montgomery Ward & Co. v. Brewer,* 416 S.W.2d 837, 844-45 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.). Accepting as we must the truth of Deubler's summary judgment affidavit, some statements Saxon personnel made to him were contrary to the company's written communications with him. But we are not presented any evidence that the Saxon employees, each acting within the course and scope of their positions, "engage[d] in a course of harassment that was willful, wanton, malicious, and intended to inflict" Deubler with "mental anguish and bodily harm."

Violation of the Texas Debt Collection Practices Act (TDCPA)

The TDCPA is codified at Chapter 9 of the Texas Finance Code. TEX. FIN. CODE ANN. §§ 392.001-.404 (West 2006 & Supp. 2014). On two grounds, Deubler contends a fact issue exists precluding summary judgment on his allegation Saxon and the Bank violated Finance Code section 392.304(a)(8). Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding[.]" TEX. FIN. CODE ANN. § 392.304(a)(8) (West 2006).

12

First, Deubler asserts the Bank attempted to "enforce the lien of the Deed of Trust to collect on the mortgage debt, and to prosecute the Forcible Detainer Suit without clear capacity to do so." Deubler does not support this argument with case or statutory citations. Instead, he directs us to read specified pages of his summary judgment response and motion to vacate, each contained in the clerk's record. While this is an appeal of a summary judgment, this approach to presenting the issue on appeal is not proper. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Moreover, the trial court did not err in its grant of summary judgment on this portion of his claim. Even if Deubler's lack-of-authority claim properly comes under section 392.304(a)(8), which we doubt, his attempt to challenge the authority of the Bank and Saxon to proceed with the non-judicial foreclosure fails for the reasons we already have discussed.

Second, Deubler asserts his affidavit establishes a fact issue concerning "specific instances of misconduct" by Saxon's agents in negligently or deceptively furnishing information he relied on. But assuming the parties to which Deubler attributes the representations in his affidavit were in fact Saxon employees authorized to make the representations, the summary judgment record does not show any misrepresentation of the character of Deubler's debt—a mortgage debt; the amount he owed; or that the debt was in default. *Cf. Miller v. BAC Home Loans Servicing, L.P.,* 726 F.3d 717, 723 (5th Cir. 2013) (finding for purposes of dismissal under federal rule 12(b)(6), home-loan debtors asserting section 392.304(a) claim did not allege they were misled by loan assignee-as loan servicer-as to character, extent, amount, or status of debt).

Violation of the Texas Deceptive Trade Practices—
Consumer Protection Act (DTPA)

A ground for appellees' no-evidence motion challenges Deubler's claims under the DTPA. TEX. BUS. & COMM. CODE ANN. § 17.41-.63 (West 2011 & Supp. 2014). Among other things, they assert Deubler is not a consumer under the Act. Deubler responds that his "claims are DTPA claims not by the language of the DTPA itself, nor by virtue of qualification of a plaintiff thereunder, but wholly via the plain avenue of Tex. Fin. Code § 392.404."

A DTPA consumer is one who: (1) seeks or acquires goods or services by purchase or lease; and (2) the goods or services sought or acquired form the basis of his complaint. *Flores v. Star Cab Coop. Ass'n,* No. 07-06-000306-CV, 2008 Tex. App. LEXIS 6582, at *14-15 (Tex. App.—Amarillo Aug. 28, 2008) (mem. op.) (citing *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351-52 (Tex. 1987) and *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.,* 724 S.W.2d 13, 15 (Tex. 1987)). Ordinarily, consumer status is a question of law for the court. *Id.* (citing *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.)).

A violation of the TDCPA is also a violation of the DTPA. TEX. FIN. CODE ANN. § 392.404 (West 2006); *Hare v. Hosto & Buchan,* PLLC, 774 F. Supp. 2d 849, 853 (S.D. Tex. 2011) ("Violations under the TDCA are automatically violations of the Texas Deceptive Trade Practices Act"). However, as a threshold matter, a plaintiff proceeding in this way under the TDCPA must still qualify as a "consumer" under the DTPA. *Cushman v. GC Services, L.P.,* 397 F. App'x 24, 28, 2013 U.S. Dist. LEXIS 93434 (5th Cir. 2010) (rejecting argument that TDCPA claimant proceeding under that act's "tie-in"

14

provision to the DTPA need not establish consumer status under the DTPA and explaining "[a]lthough the text of [DTPA] section 17.50(h) distinguishes the type of damages that DTPA plaintiffs bringing claims through 'tie-in' statutes may recover, it does not exempt those claimants from proving consumer status"); *Miller,* 726 F.3d at 725; *Marketic v. U. S. Bank Nat'l Ass'n,* 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (rejecting borrower's argument that DTPA consumer status was not required to assert TDCPA tie-in claim to DTPA, court explained borrower "fail[ed] to recognize that Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 17.50(h) does not exempt claimants from showing that they qualify as a 'consumer' under Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 17.45(4)"); *see Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 706 (Tex. 1983) (standing to sue under the DTPA requires that the plaintiff qualify as a consumer).

Here Deubler obtained the loan as purchase money for a home. *Flenniken,* 661 S.W.2d at 708. But his complaint is with an intended modification of the loan. The loan servicing and modification of the terms of indebtedness are not part of the arrangement for financing the purchase of Deubler's home. Rather, his complaint is of an entirely different transaction based on representations made after he purchased his home. *See Miller,* 726 F.3d at 725; *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App.—Fort Worth 2007, pet. denied) (homeowner seeking refinancing services not consumer). Deubler did not qualify as a consumer under the DTPA.

Loan Modification Agreement and the Statute of Frauds

Deubler asserts Saxon, individually and as the Bank's agent, committed a "material breach" by "representing to [Deubler] that there would be a modification and

15

no foreclosure unless and until all sums held in suspense had been properly posted." The record contains no written agreement for modification of the loan or forbearance of foreclosure. Nor is there evidence of a promise to sign a prepared agreement validating any representations. Deubler relies only on oral statements. Appellees argue this claim is barred by the statute of frauds and we agree.[4] Under the statute of frauds, "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE ANN. § 26.02(b) (West 2015). An agreement regarding the transfer of property or the modification of a loan must be in writing to be valid. *Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 256 (5th Cir. 2013); *Guajardo v. JP Morgan Chase Bank, N.A.,* No. 13-51025, 2015 U.S. App. LEXIS 3731, at *7 n.3 (5th Cir. Mar. 10, 2015) (per curiam) (op. on reh'g) (alleged promise to delay foreclosure never reduced to writing). The statute of frauds also requires any agreement in "which a financial institution loans or delays repayment of" a loan must be in writing. TEX. BUS. & COM. CODE ANN. § 26.02(a)(2) (West 2015); *see Williams v. Wells Fargo Bank, N.A.,* 560 F. App'x 233, 239, 2014 U.S. App. LEXIS 5137 (5th Cir. 2014) (per curiam) ("The statute of frauds also applies to preclude enforcement of oral modifications to loan agreements"); *Bank of Tex., N.A. v. Gaubert,* 286 S.W.3d 546, 555-56 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.).

---

[4] The statute of frauds is an affirmative defense. *Dynegy, Inc. v. Yates,* 422 S.W.3d 638, 640 (Tex. 2013).

Wrongful Foreclosure

Appellees sought a no-evidence summary judgment on Deubler's wrongful foreclosure claim, asserting he had no evidence supporting each element. On appeal, Deubler argues his affidavit raises a fact issue precluding summary judgment on this claim. A wrongful foreclosure claim requires proof of: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Buchanan v. Compass Bank,* No. 02-14-00034-CV, 2015 Tex. App. LEXIS 372, at *14-15 (Tex. App.—Fort Worth Jan. 15, 2015, pet. denied) (citing *Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). While not particularly clear from his brief, Deubler seems to contend a defect occurred in the foreclosure sale procedure because the Bank and Saxon lacked authority to give required notices, appoint substitute trustees, and conduct the sale. We have already rejected Deubler's lack-of-authority argument, and find it without merit here also. Deubler presented no evidence supporting a claim of wrongful foreclosure.

Wrongful Eviction

In their no-evidence motion for summary judgment, appellees asserted Deubler had no evidence of a wrongful eviction claim against the Bank.[5] The elements of a wrongful eviction claim are: (1) the existence of an unexpired contract of renting; (2) the tenant's occupancy of the premises; (3) the landlord's eviction or disposition of the

---

[5] The basis of this claim is not clearly demonstrated in the record. In the statement of facts section of his brief, Deubler states the "property affected was and remains [Deubler's] residential homestead." According to appellees' brief, "Deubler continues to reside in the Property."

tenant; and (4) damages attributable to the eviction. *McKenzie v. Carte,* 385 S.W.2d 520, 528 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.). While Deubler also argues his affidavit raises an issue of fact on this claim, the gravamen of his complaint seems to be the authority of the Bank. That is, because it lacked authority to conduct the sale it could not qualify as a bona fide purchaser of his home at the sale and hence could not properly seek a writ of possession in justice court. Thus the complaint centers on the asserted lack of authority of the Bank, an issue we have resolved against Deubler. Further, under the terms of the deed of trust, if the property is sold under the power of sale by the trustee, the borrower "shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding." A tenant "who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance." *Coinmach Corp. v. Aspenwood Apt. Corp.,* 417 S.W.3d 909, 912 (Tex. 2013). "[A] tenant at sufferance is a trespasser and can be liable in tort (although the extent of liability depends on the nature of the trespass) . . . ." *Id.* at 912-13. A trespasser does not hold a right of possession of the property. *Id.* at 919.

Deemed Admissions

Finally, Deubler argues the judgment cannot rest on the strength of his deemed admissions. The record contains numerous requests for admissions served on Deubler by the Bank and Saxon. Some seem to seek admission of matters of law, others mixed questions of law and fact, and others questions of fact. Deubler apparently did not serve timely responses to the admissions. *See* TEX. R. CIV. P. 198.2(c) ("If a response

18

is not timely served, the request is considered admitted without the necessity of a court order"). We dismiss Deubler's complaint on this sub-issue as moot. We have conducted our *de novo* review of his appellate complaints without consideration of his admissions. As for whether the deemed admissions could properly support a judgment, we do not say.

We overrule Deubler's first issue.

Second Issue: Was Summary Judgment Premature?

By his second issue, Deubler argues the trial court abused its discretion by proceeding to summary judgment because an adequate time for discovery had not passed.

Suit was filed on August 21, 2011, and appellees filed their motions for summary judgment on October 19, 2012. Deubler filed a detailed response and supplemental response to the motions. The trial court signed the order granting appellees' summary judgment motions on February 26, 2013. We are not shown in the record, nor do we find, Deubler's sworn representation to the trial court of unavailable evidence. *See* TEX. R. CIV. P. 166a(g). Nor are we shown that he otherwise, by sworn motion or affidavit, sought a continuance or urged that an adequate time for discovery had not passed. TEX. R. CIV. P. 166a(i). The trial court did not abuse its discretion by proceeding to final disposition of the case on appellees' motions for summary judgment.

Deubler's second issue is overruled.

Conclusion

We find no error in the trial court's grant of summary judgment for the Bank and Saxon.  Accordingly, we affirm the court's judgment.


James T. Campbell
Justice