**Anita J. WHITE, Appellant,**

v.

**MELLON MORTGAGE COMPANY**
**and Metropolitan Life Insurance**
**Company, Appellees.**

No. 12–97–00220–CV.

Court of Appeals of Texas,
Tyler.

May 27, 1999.

Lawrence Walner, Kristi L. Browne, M. Scott Barrett, Chicago, IL, Mark A. Matthews, Richard J. White, Houston, for appellant.

Jacalyn D. Scott, Houston, William J. Kirkman, Ft. Worth, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

Anita J. White ("White") appeals a summary judgment granted in favor of Mellon Mortgage Company ("Mellon") and Metropolitan Life Insurance Company ("MetLife") in a suit brought by White for injunctive and declaratory relief plus damages for failure to notify her of her right to cancel allegedly unnecessary private mortgage insurance ("PMI"). White presents two issues for our review: 1) whether the trial court erred when it granted summary judgment for Mellon and MetLife; and 2) whether the trial court erred when it denied White's motion for continuance of the summary judgment hearing based upon her request to conduct additional discovery. We will affirm.

In 1970, White and Evelyne Bollig ("Bollig") purchased a duplex in Austin, Texas, from Trevlyan and Carol Seymour ("the Seymours"). In connection with that purchase, White and Bollig assumed a note and deed of trust executed by the Seymours two years earlier. The Seymours had purchased the duplex in 1968 for $24,600, made a down payment of $2,500, and signed a note and deed of trust in favor of Mortgage Investment Corporation ("MIC") for $22,100. The note had a thirty-year term and was secured by a deed of trust on the property.

To mitigate against the risk of the Seymours' default on the note, MIC purchased PMI on the loan from Mortgage Guaranty Insurance Corporation ("MGIC") and required the Seymours to pay the annual premiums on the policy as set forth in the deed of trust. PMI is generally required by lenders in mortgage transactions when the borrower makes a small down payment. PMI is designed to shift the risk of loss from the lender to the insurer in the event that the borrower defaults on the mortgage note and there is a deficiency after foreclosure and sale. Although the lender is the insured and beneficiary of the policy, the borrower is typically required to pay the premiums as a condition of obtaining the low down payment loan (where the loan-to-value ratio is greater than eighty percent). The purchase of PMI is not mandated by federal or state law; rather it is required pursuant to the eligibility requirements of the Federal National Mortgage Association ("Fannie Mae") and the Federal National Home Loan Mortgage Corporation ("Freddie Mac") as a precondition for the purchase of the loans by these entities in the secondary mortgage market.

Under the terms of the deed of trust, the Seymours (and then White by virtue of her assumption) were obligated to pay or reimburse to MIC as a part of their monthly escrow payments, premiums for the mortgage insurance paid by MIC to MGIC. The deed of trust contains the following covenant:

The mortgagor covenants to pay the premiums for mortgage loan insurance obtained as they become due and payable. In the event such premiums are payable annually, one-twelfth of such annual premium shall be paid with tax and insurance deposits and all of the covenants of the paragraph for such escrow deposits shall be applicable to the mortgage loan insurance premiums. In the event mortgagors fail to pay such premiums, or make such deposits, the mortgagee may make such advances therefor; such advances shall be due and payable on demand and shall be secured

hereby. Failure to reimburse mortgagee for such advances shall, at the option of the mortgagee, constitute a default and shall accelerate the indebtedness secured hereby.

There is no provision in the deed of trust or note which allows the borrower to terminate the PMI payments prior to satisfaction of the note. In 1988, Bollig deeded her interest in the property to White in consideration of White's assumption and promise to pay the note and to keep and perform all of the covenants in the deed of trust. According to the 1995 mortgage statement for the White loan, the 1995 PMI premium totaled $9.17.

In May of 1988, MetLife purchased an interest in the subject loan and MIC assigned the note and deed of trust to MetLife. Mellon is the current servicer of the note and deed of trust. Neither Mellon nor MetLife had any role in procuring the mortgage insurance. For purposes of the motion for summary judgment, MetLife and Mellon accepted as true the allegation that MetLife's servicing guidelines, a contract between MetLife and Mellon, were the same as those of Fannie Mae. Upon this premise, MetLife has a written policy in its guidelines which declares that a servicer must cancel PMI upon the request of a mortgagor at such time as the mortgagor reaches a loan-to-value ratio of eighty percent or less based upon the original sale price. Specifically, the guidelines state:

**A. Cancellation based on original value.** When borrower-purchased mortgage insurance coverage is canceled based on the original value of the property, the cancellation may result from the servicer's use of procedures that provide for automatic cancellation under certain conditions or from the mortgagor's request to have the coverage canceled.

Servicers may automatically cancel borrower-purchased mortgage insurance coverage for a current first mortgage when the unpaid principal balance of the mortgage has been paid down to 80% of the original value of the property, unless the servicer thinks that the property may have depreciated in value since the original appraisal.

Servicers generally must cancel borrower-purchased mortgage insurance coverage for a current mortgage if the mortgagor requests that it be canceled and the unpaid principal balance of a first mortgage has been paid down to 80% of the original value of the property (or, if the mortgage is a second mortgage, the combined principal balance of both the first and second mortgages having been paid down to 70% of the value of the property at the time we purchased or securitized the second mortgage). However, when the mortgage was closed as a refinance transaction, the servicer should not cancel the coverage unless the mortgagor has made 12 consecutive payments and has never been more than 30 days delinquent during that 12–month period. In addition, if the servicer believes that it is necessary to assure that the property has retained its value, the servicer may require the mortgagor to submit a current appraisal for the property before it cancels the coverage.

In her first amended petition, White alleged the following causes of action: 1) unfair and deceptive practices (violation of all states' unfair and deceptive practices statutes, specifically New York Business Law §§ 349–50) by failing to inform borrowers of their PMI cancellation rights; 2) breach of duty of good faith and fair dealing; 3) breach of fiduciary duty; 4) violation of Texas Deceptive Trade Practices Act; 5) violation of the DTPA through the Texas Insurance Code; 6) MetLife's violation of New York Insurance Law; and 7) request for declaratory and injunctive relief on the PMI contract provision.

Pursuant to Tex.R. Civ. P. 166a(c), a summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he is therefore entitled to judgment as a matter of law. *See also State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex.

1998). In a summary judgment proceeding, the burden of proof is on the movant, and all doubts as to the existence of a genuine issue of fact are resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996). Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. The nonmovant must then respond to the motion for summary judgment by presenting to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979). Summary judgments are reviewed in accordance with the following standards: 1) the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; 2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and 3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

■ A trial court should grant a defendant's motion for summary judgment if the defendant disproves at least one essential element of the plaintiff's causes of action, or if the defendant establishes all the elements of an affirmative defense as a matter of law. *Id.* When the motion for summary judgment is based on several different grounds and the order granting the motion is silent as to the reason for granting the motion, the appellant must show that each independent ground alleged in the motion is insufficient to support summary judgment, and the summary judgment must be affirmed if any of the theories are meritorious. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex.1993). The usual presumption that the judgment is correct does not apply to summary judgments. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984).

■ Although White seeks relief under a variety of legal theories, her obligation to pay for PMI rests ultimately on the terms of the mortgage contract she assumed. That instrument contemplates life-of-loan mortgage insurance, and it does not provide a specific right of cancellation to the borrower. This same conclusion has been reached by at least four other courts that have considered similar mortgage contracts. Those courts rejected arguments that these contracts include a right of cancellation of mortgage insurance in the borrowers or a right of the borrowers to notice from the lenders or their assignees regarding cancellation. *See The Huntington Mort. Co. v. DeBrota*, 703 N.E.2d 160, 166 (Ct.App.Ind.1998) (PMI premiums are to be paid "until the Note is paid in full"); *Hinton v. Federal Nat. Mortg. Ass'n*, 945 F.Supp. 1052, 1056 (S.D.Tex.1996), *affirmed and opinion adopted*, 137 F.3d 1350 (5th Cir.1998) (provisions of the deed of trust "require [borrower] to maintain mortgage insurance for the life of the loan"); *May v. Old Kent Bank and Trust Co.*, No. 95–2697, slip op. at 2 (Mich.Cir. Ct., July 15, 1996) (mortgage insurance payments "are due for the duration of the loan"); *Siegl v. Twin City Federal Mort. Corp.*, No. CT–95–2306, slip op. at 13 (Minn.Dist.Ct., July 26, 1995) (mortgage contract does not provide a right to cancel PMI). As set forth in greater detail below, the individual legal theories articulated by White each fail to state a cause of action upon which relief can be granted, but the absence of a contractual right of White to cancel her mortgage insurance is a flaw that fundamentally undermines every cause of action alleged in her Petition.

■ In the instant case, the trial court did not specify the bases upon which it granted summary judgment for Mellon and MetLife. Consequently, if any of the theories are meritorious, we must affirm the trial court's judgment. In White's first cause of action, she contended that Mellon and MetLife violated the unfair and deceptive practice statutes of all the states

in which class members reside. Also, White specifically alleged a violation of New York General Business Law §§ 349–50 because MetLife is located in New York. She maintained that Mellon's and MetLife's failure to inform borrowers of their PMI cancellation rights was inconsistent with the mortgages and constituted a deceptive practice under each state's UDAP statute. She alleged that this failure was deceptive because most borrowers are uninformed as to their rights of cancellation, borrowers trust and rely to a high degree upon their lenders, borrowers accept their lender's representations concerning the proper requirements on faith, and are not aware that they are permitted to obtain reductions in their monthly payments by elimination of the PMI. White contended that the failure to inform borrowers of this right constituted an omission of a material fact which had a tendency to mislead.

In New York, the elements of a claim for deceptive practices are merely (1) that the act or practice was misleading in a material respect, and (2) that the plaintiff was injured. N.Y. GEN. BUS. LAW §§ 349–350 (McKinney 1997); *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590 (Sup.Ct.1987). We hold that when a mortgagor and mortgagee contract for the mortgagor to pay PMI premiums for the life of the loan, even if not "necessary," there is no deceptive practice as a matter of law. The parties are free to contract for such insurance and, in this court's opinion, they have done just that. It was not "deceptive" for MetLife and Mellon to fail to inform White of a contract right that she did not possess. In addition, the deed of trust in the instant case provides that "Grantors hereby agree and contract that the laws of the State of Texas ... are expressly adopted and made a part hereof." In White's case, at least, the New York deceptive practice act does not apply. We hold, therefore, that White's first cause of action fails as a matter of law.

White's second cause of action alleged that Mellon and MetLife breached their duties of good faith and fair dealing by failing to give her PMI cancellation information contained in the servicing guidelines. In order to impose a duty of good faith and fair dealing on Mellon and MetLife, White must establish that a special relationship exists between herself and her mortgagee and its servicer. *See Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Under Texas law, this requisite special relationship and the circumstances which give rise to a duty of good faith and fair dealing are very limited. There is not, as a matter of law, a covenant of good faith and fair dealing in every contract. *Id.* at 167.

Mellon's obligation as a servicer for MetLife is to collect the payments due under the note and deed of trust and disburse those monies as required by the underlying documents. White does not complain that Mellon failed in any of these duties. Faced with virtually identical allegations, other courts have concluded that there is no viable claim against a servicer for not informing a borrower of the circumstances under which she may seek to cancel PMI. *Hinton*, 945 F.Supp. at 1059; *Siegl*, No. CT–95–2306, slip op. at 7–11. And the relationship between a mortgagor and mortgagee does not give rise to a duty of good faith. *Hinton*, 945 F.Supp. at 1060; *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex.1990). Since neither MetLife nor Mellon owe White a duty of good faith and fair dealing in this particular circumstance, White's second cause of action fails as a matter of law.

White alleged in her third cause of action that Mellon and MetLife breached their fiduciary duty to her and other mortgagors. This is based upon her contention that the premiums for PMI were collected through the use of an escrow account for which the lender MetLife was the escrow agent. MetLife, in turn, retained the services of a mortgage servicer, Mellon, to

manage the escrow account. According to White, as escrow agents, MetLife and Mellon owed her the fiduciary duty to conserve her money and avoid self-dealing. By collecting unnecessary PMI premiums from White which inured to their benefit, MetLife and Mellon breached their fiduciary duty to White.

It is unnecessary for us to reach the question of whether or not MetLife and Mellon were escrow agents, since we hold that even if they were, they did not owe the claimed fiduciary duty to White. With respect to the operation of the escrow account, the servicer has a duty to conduct it as directed by the agreement between the parties in interest. *Watkins v. Williamson,* 869 S.W.2d 383, 387 (Tex.App.—Dallas 1993, no writ). As an escrow agent for premiums and taxes, Mellon and Met-Life have the duty to safeguard, disburse, and account for funds properly. The disbursing agent's duties do not include securing the lowest insurance rate, the best terms for the borrower, or the strongest company. *Trevino · v. Brookhill Capital Resources,* 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied); *Hinton,* 945 F.Supp. at 1060.

■ Payment of funds by the ·mortgagor into an escrow account for the mortgagee's use to meet tax and insurance obligations on the property as they accrue does not create a trust or fiduciary relationship under Texas law.· *Wesson v. Jefferson Sav. & Loan Ass'n,* 641 S.W.2d 903, 905 n. 2 (Tex.1982). Mellon's obligation under the mortgage was to receive the escrow payments on behalf of MetLife, to retain them, and to apply them to the payment of insurance premiums. *See Umdenstock v. American Mortgage & Invest. Co.,* 363 F.Supp. 1375, 1379 (D.Okla.1973). White failed to raise a fact issue as to any mismanagement of the funds. We hold that MetLife and its servicer Mellon did not breach any fiduciary duty owed to White.

■ In White's fourth cause of action, she maintained that Mellon and Met-Life violated the Texas Deceptive Trade Practices Act. Mellon and MetLife argue, however, that White is not a consumer under the DTPA. We agree. Only consumers have standing to bring DTPA claims. To qualify as a consumer, a person must have sought or acquired goods or services by purchase or lease, and the goods or services must form the basis of the complaint. TEX. BUS. & COM.CODE §§ 17.45(4) and 17.50(a) (Vernon Supp. 1998); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981). An activity related to a loan transaction is a "service" for DTPA purposes only if the activity at issue is, from the plaintiff's point of view, an objective of the transaction, not merely incidental to it. *FDIC v. Munn,* 804 F.2d 860, 865 (5th Cir.1986).

White acquired the real estate from the Seymours, but that acquisition is not the basis of her complaint. White's complaint is that she has been unnecessarily paying PMI premiums. This obligation arises out of the deed of trust provisions. The obligations White assumed in the note and deed of trust do not constitute the "acquisition" of a good or service. Mellon's collection of premium payments for MetLife, as required by the deed of trust, is not a service that White sought to purchase. White's petition confirms that the purchase of PMI was not her objective; in fact, she would have bypassed it if her mortgage lender had not required it as a condition of the loan. Because White is not a consumer as to the activity complained of against Mellon and MetLife, she can make no claim under the DTPA.

■ Even if White could be classified as a consumer under the DTPA, she still would have no cause of action for the alleged deceptive practice. Because White expressly agreed to pay PMI premiums as they become due and payable, she suffered no injury from having to live up to her bargain. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.1998) (DTPA action requires actual injury). And MetLife and Mellon could not have injured White by failing to inform her of a contract right

that she did not possess. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995) (express "as is" in sales contract precludes finding that seller caused buyer's injuries); *Griffith v. Levi Strauss & Co.*, 85 F.3d 185, 187 (5th Cir.1996) (retailer's DTPA claim for manufacturer's failure to inform him that it allowed retailers to wholesale merchandise where retailer's contract forbade wholesale, fails).

 In her fifth cause of action, White contended that MetLife and Mellon violated the Texas Insurance Code. Specifically, she alleged that the mortgagee and servicer violated the following provisions:

(1) Article 21.21 § 4(2): false information and advertising generally;

(2) Article 21.21 § 4(11)(b): failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

(3) Article 21.21 § 4(11)(e): failing to disclose any matter required by law to be disclosed, including a failure to make disclosure in accordance with another provision of this Code.

TEX. INS.CODE ANN. art. 21.21 § 4 (Vernon Supp.1999). Additionally, she maintained that those Insurance Code violations also created a cause of action under § 17.50(a)(4) of the DTPA. TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp. 1998). As we discussed in our section on the DTPA, Mellon and MetLife did not engage in a deceptive practice. White could have attempted to renegotiate this provision or even gone to another lender who would not have required the PMI. Instead, White agreed to abide by the provisions of the note and deed of trust, which stipulated that she would pay PMI premiums when they were due and payable. She cannot now complain that Mellon and MetLife failed to disclose a contract right she did not possess. *See Prudential Ins. Co. of Am.*, 896 S.W.2d at 161. And, as we stated earlier, White is not a consumer under the DTPA. Her fifth cause of action fails as a matter of law.

White alleged, in her sixth cause of action, that MetLife violated New York Insurance Law § 6503(d), which states in relevant part:

... a mortgagor shall not be required to pay, directly or indirectly, the costs of continuing mortgage guaranty insurance on a loan secured by a first lien on real estate when the unpaid principal amount of the real estate loan represents seventy-five percent or less of the real estate's appraised value at the time the loan was made or such higher percentage of such appraised value as may be established from time to time by general regulation of the banking board ...

N.Y. INS. LAW § 6503 (McKinney 1997). As we earlier stated, however, the parties have contracted that Texas law, not New York law, applies to the instant case. White's sixth cause of action fails as a matter of law.

 In her seventh cause of action, White sought declaratory relief to the effect that she had the right to an automatic cancellation of the PMI because of the servicing guidelines between MetLife and Mellon. In other words, she claims to be a third-party beneficiary of the guidelines. Texas law imposes a heavy burden on a person claiming third-party beneficiary status. To prove such status, a person must show that she was not a party to the contract, that the contract was made for her direct benefit, and that the contracting parties intended that she so benefit. *Hellenic Inv., Inc. v. Kroger Co.*, 766 S.W.2d 861, 865 (Tex.App.—Houston [1st Dist.] 1989, no writ). "Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties." 14 TEX. JUR. 3d *Contracts* § 237 at 416. One who is benefitted incidentally by performance of the contract may not seek enforcement of the contract. *Mandell v.*

*Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The "servicing guidelines" upon which White relies state only that they are intended to benefit the lender. Consequently, White cannot, under Texas law, be a third-party beneficiary of the selling and servicing contract, much less of such guidelines. In a similar claim, the court rejected a borrower's assertion that he was a third-party beneficiary of Housing and Urban Development (HUD) handbook which, like the Fannie Mae servicing handbook, establishes guidelines for servicing HUD insured mortgages. *See Roberts v. Cameron–Brown Co.*, 556 F.2d 356 (5th Cir.).

We hold that White has no automatic right to a cancellation of PMI, and MetLife and Mellon have no duty to inform a borrower of provisions contained in servicing guidelines between Mellon and MetLife. White, a stranger to any such guidelines, is not, as a matter of law, entitled to construe or enforce these servicing guidelines nor benefit from their provisions. *Mandell,* 822 S.W.2d at 161; *Hinton,* 945 F.Supp. at 1057. They are not part of the contractual bargain that governs the relationship between the lender and the borrower and were not intended to and do not provide any rights or benefits to the borrower.

The trial court properly granted summary judgment for Mellon and MetLife on all of White's causes of action. Accordingly, we overrule issue one.

■ In her second issue, White alleges that the trial court erred when it denied her request for a continuance. White filed her Original Petition on October 2, 1996. Mellon filed its Motion for Summary Judgment on January 23, 1997 and set the motion for hearing on February 28. MetLife filed its Motion for Summary Judgment on February 6, 1997. White filed her first discovery requests on February 21, the same day she filed her Motion for Continuance. · In her motion, she asserted that she required discovery regarding the terms and conditions of the relevant PMI insurance policies at issue in the lawsuit.

White also maintained that discovery was necessary to determine which business, regulatory and legal changes give her rights to PMI cancellation which did not exist at the time White's predecessors in interest sought the initial deed of trust almost thirty years earlier. She further asserted the need for Mellon's and MetLife's loan servicing agreement and the deposition testimony from both defendants' corporate representatives regarding the extent to which the loan servicing agreement provided her with third-party benefits.

Although it is not completely clear from the record, the trial court denied White's motion for continuance and heard argument on the summary judgment motions. It did, however, take the summary judgment motions under advisement and set another hearing for May 2 for the conclusion of oral argument. On that date, White filed her second Motion for Continuance, complaining that Mellon and MetLife had not produced the PMI policies and had not allowed White to take the depositions of the company representatives. This motion was also denied.

Pursuant to Tex.R. Civ. P. 251, a trial court may grant a continuance on sufficient cause supported by affidavit, by consent of the parties, or by operation of law. The granting or denial of a motion for continuance is within the sound discretion of the trial court. *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex.1997). Before the reviewing court will reverse the trial court's ruling, it should clearly appear from the record that the trial court has disregarded the party's rights. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986). An appellate court may reverse for abuse of discretion only if, after searching the entire record, it finds that the trial court's decision was clearly arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987). Generally, it is not an abuse of discretion to deny a motion for continuance if the party has received the twenty-one

days notice required by Rule 166a(c). *Verkin v. Southwest Ctr. One, Ltd.*, 784 S.W.2d 92, 95 (Tex.App.—Houston [1st Dist.] 1989, writ denied). And in considering continuance requests, a trial court can presume that a plaintiff has investigated his own case prior to filing. *McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex.App.—Houston [14th Dist.] 1993, no writ).

In reviewing the record, we note that White, the plaintiff below, received more than twenty-one days notice of the summary judgment hearing. Furthermore, she did not file any deposition notices and she failed to file a Motion to Compel Discovery until she filed her second Motion for Continuance. Additionally, she did not clarify to the trial court in her Motion for Continuance why the depositions of the corporate representatives were imperative to defend against summary judgment. And the court could have reasonably determined that discovery of the PMI policies was unnecessary and irrelevant to the determination of the legal issues in this case. We hold that the trial court did not abuse its discretion when it denied White's Motion for Continuance. Accordingly, we overrule issue two.

We *affirm* the judgment of the trial court.