TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00388-CV






Eileen Bennett, Appellant



v.



Bank United; Patricia Lackey, as Escrow Manager of the Mortgage Loan Administration;

First Bank National Association, as Trustee for the benefit of the holders of the First

Boston Mortgage Securities Corporation Conduit Mortgage Pass-through

Certificates Series and any other Holder of Plaintiff's

Mortgage, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. 99-11438, HONORABLE LORA LIVINGSTON, JUDGE PRESIDING





O P I N I O N 




 This appeal arises from a summary judgment granted in favor of appellees Bank
United; Patricia Lackey, as Escrow Manager of the Mortgage Loan Administration ("Lackey"); First
Bank National Association, as Trustee for the benefit of the holders of the First Boston Mortgage
Securities Corporation Conduit Mortgage Pass-through Certificates Series and any other holder of
appellant Eileen Bennett's mortgage, against appellant Eileen Bennett. For the reasons set out
below, we will affirm the summary judgment.


BACKGROUND


 In 1979 Bennett financed the purchase of a residence through Weyerhaeuser Mortgage
Company ("Weyerhaeuser"). (1) As part of the financing, Weyerhaeuser required that Bennett agree
to reimburse Weyerhaeuser for the private mortgage insurance ("PMI") premiums on an insurance
policy Weyerhaeuser obtained for its benefit. There were no provisions in the deed of trust
permitting Bennett to terminate the PMI payments. Rather, the deed of trust stated that Bennett was
required to include the amount as part of her monthly escrow payments "until the Note is paid in
full," and to reimburse the premium amount "until such time as the requirement for such insurance
terminates in accordance with Borrower's and Lender's written agreement or applicable law." The
Mortgage Guaranty Insurance Corporation ("MGIC") issued the policy to Weyerhaeuser. (2)

 Thereafter, Weyerhaeuser sold the Bennett loan to United Savings Association of
Texas, which later changed its name to Bank United. Bank United then sold Bennett's loan and
others to First Boston Capital Corporation ("First Boston Capital"), which in turn sold the mortgage
loans to First Boston Mortgage Securities Corp. ("First Boston Mortgage"). Thereafter, First Boston
Mortgage "securitized" the loans, including Bennett's, and transferred them to First Bank National
Association as Trustee for the benefit of First Boston Conduit Mortgage Pass-through Certificates
1993-2 ("First Bank"). Despite all these transfers, Bank United remained responsible for servicing
Bennett's loan for First Boston Mortgage. As a result of Bank United's sale of Bennett's loan to
First Boston Capital and the subsequent sale to First Boston Mortgage, Bennett's loan became
subject to a "Pooling and Servicing Agreement" and "Seller's Warranties and Servicing Agreement,"
which contained no provisions allowing for termination of the PMI.

 After paying the premiums in accordance with the deed of trust for almost twenty
years, in 1998 Bennett requested that Bank United discontinue charging for PMI because she had
achieved a loan-to-value ratio of below eighty percent, a fact that is undisputed. (3) Bank United
denied her request. Bennett spoke with Lackey, Bank United's mortgage escrow manager, who
informed her that, under these circumstances, Bank United would normally waive the PMI. 
However, Bank United would not do so in Bennett's case because the holder of the deed of trust,
First Boston Mortgage, refused to cancel the requirement. (4) In February 1999, Bank United informed
Bennett that $75.89 had been deducted from her escrow account for PMI payments. Bennett then
brought this action, alleging, inter alia, violation of the Texas Deceptive Trade Practices Act
("DTPA"), see Tex. Bus. & Com. Code Ann. § 17.50 (West 2002), violation of the insurance code,
fraud, and conversion. The district court granted appellees' motion for summary judgment, and
Bennett appeals.


DISCUSSION


 In their traditional motion for summary judgment, appellees asserted a right to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). Because the propriety of summary judgment
in this case is a question of law, we review the trial court's decision de novo. See Natividad v.
Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); McCarthy Bros. Co. v. Continental Lloyds Ins. Co.,
7 S.W.3d 725, 728 (Tex. App.--Austin 1999, no pet.). The movant is required to disprove at least
one element of each of the nonmovant's theories of recovery or to plead and conclusively establish
an affirmative defense which defeats the nonmovant's cause of action. See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 679 (Tex. 1979).

 On appeal, Bennett argues that: (1) appellees acted unconscionably in violation of
the DTPA and failed to provide a required statutory notice concerning PMI, (2) Bennett is a third-party beneficiary to the PMI contract between appellees and the insurer and is thus entitled to recover
for wrongful payment of PMI premiums from her escrow account, and (3) appellees engaged in
unfair discrimination in violation of the insurance code.


DTPA Violation

 By her first issue, Bennett argues that Bank United and First Boston Mortgage acted
unconscionably and in violation of the DTPA when First Boston Mortgage, through Bank United,
refused to cancel the PMI, despite Bank United's statement that it would usually curtail such a
requirement for someone in Bennett's position. Appellees respond that Bennett is not a consumer
for purposes of the DTPA and that even if she were, her claim fails because Bank United's actions
were not unconscionable.

 The DTPA mandates liberal construction to promote the underlying purpose of the
act, to "protect consumers against false, misleading, and deceptive business practices,
unconscionable actions, and breaches of warranty and to provide efficient and economical
procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44 (West 2002). A
"consumer" under the DTPA is defined as "an individual, partnership, corporation, . . . who seeks
or acquires, by purchase or lease, any goods or services." Id. § 17.45(4) (West 2002). To qualify
as a consumer, the plaintiff (1) must seek or acquire goods or services by purchase (5) or lease, and (2)
the goods or services purchased or leased must form the basis of the complaint. Sherman Simon
Enters., Inc. v. Lorac Serv. Corp., 724 S.W.2d 13, 14 (Tex. 1987). The purchase of services, in the
context of the DTPA, has been defined as the actual transmission of services from one person to
another by voluntary act or agreement, founded on valuable consideration. Hall v. Bean, 582 S.W.2d
263, 265 (Tex. Civ. App.--Beaumont 1979, no writ); see also Tex. Bus. & Com. Code Ann.
§ 17.45(2) (West 2002) ("'Services' means work, labor, or service purchased or leased for use,
including services furnished in connection with the sale or repair of goods."). A plaintiff's standing
as a consumer is established by its relationship to the transaction, not by a contractual relationship
with the defendant. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 814 (Tex.
1997); Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707 (Tex. 1983). Whether a
plaintiff is a consumer under the DTPA is a question of law. Holland Mortgage & Inv. Corp. v.
Bone, 751 S.W.2d 515, 517 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.).

 Appellees argue that Bennett is not a consumer under the DTPA because she never
"sought or obtained PMI"; it was her lender that sought and obtained the insurance. Appellees also
contend that Bennett's agreement to reimburse the lender for the PMI premiums was "incidental to
her loan obligations." See Federal Deposit Ins. Corp. v. Munn, 804 F.2d 860, 865 (5th Cir. 1986). 
Bennett responds that her objective was to purchase a residence and to facilitate that transaction, and
her lender required her to pay the PMI premiums as part of the loan agreement.

 In evaluating Bennett's consumer status, we examine whether her "objective" was
the purchase or lease of a good or service. Tex. Bus. & Com. Code Ann. § 17.45 (West 2002); see
also La Sara Grain Co. v. First Nat'l Bank, 673 S.W.2d 558, 567 (Tex. 1984). The supreme court
has examined this question in some detail. In Flenniken, the Flennikens contracted with Easterwood
for the construction of a residence. 661 S.W.2d at 706. The Flennikens executed a mechanic's lien
note, secured by a deed of trust, to Easterwood. Id. Easterwood assigned the note and contract lien
to Longview Bank & Trust in return for the bank's commitment to provide interim construction
financing. Id. The bank provided the financing, but Easterwood abandoned the project before
completion. Id. As a result, the bank foreclosed on the Flennikens' property, and the Flennikens
sued under the DTPA. Id. The bank argued that the Flennikens were not consumers under the
DTPA, and the court of appeals agreed, holding that they were not consumers as to the transaction
between Easterwood and the bank "because the purchase of the house and Easterwood's services did
not form the basis of the complaint." Id. at 707. The supreme court reversed, holding that under the
DTPA "the range of possible defendants is limited only by the exemptions provided in section
17.49," and that "[s]ection 17.50(a)(3) . . . allows a consumer to 'maintain an action if he has been
adversely affected by . . . any unconscionable action or course of action by any person.'" Id. at 706
(quoting Act of May 10, 1973, 63d Leg., R.S., ch. 143, § 1, sec. 17.50, 1973 Tex. Gen. Laws 322,
327). In discussing the consumer's relationship to the other parties, the supreme court held that
"privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status
as a consumer under the DTPA." Id. at 707 (citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d
535, 541 (Tex. 1981)). Continuing, the Flenniken court observed:


A plaintiff establishes his standing as a consumer in terms of his relationship to a
transaction, not by a contractual relationship with the defendant. The only
requirement is that the goods or services sought or acquired by the consumer form
the basis of his complaint.



Id.

 In La Sara Grain, the supreme court reaffirmed Flenniken, stating that "a lender may
be subject to a DTPA claim if the borrower's 'objective' is the purchase or lease of a good or service
thereby qualifying the borrower as a consumer." 673 S.W.2d at 567; see also Knight v. International
Harvester Credit Corp., 627 S.W.2d 382, 389 (Tex. 1982) (purchaser's "objective in the transaction
was the purchase of a dump truck [and] . . . financing was merely the means of making that
purchase"). The court also revisited its earlier decision in Cameron, stating that "the buyer was a
DTPA consumer because of the purchase of the house; therefore, he could bring a DTPA action
against anyone in the transaction who violated the act," which included the realtor. La Sara Grain,
673 S.W.2d at 566-67.

 Appellees rely on White v. Mellon Mortgage Co. to support their argument that
Bennett was not a consumer. 995 S.W.2d 795 (Tex. App.--Tyler 1999, no pet.). White purchased
real estate from the Seymours and assumed a note and deed of trust that required her to pay PMI
premiums for the benefit of the mortgagee. Id. at 801. White complained that the loan servicer,
Mellon Mortgage, and Metropolitan Life Insurance Company, which had purchased the assumed
note and deed of trust from the Seymours' original lender, violated the DTPA. Id. The court held
that White was not a consumer because White confirmed that she neither sought Mellon's service
of collecting PMI payments nor was it her objective to purchase PMI. Id. Here, Bennett alleges that
she initially derived a benefit from PMI because she was "protected from any deficiency between
what her home sold for in the event of her death and the amount for which her home was sold," and
that this benefit ensued until the loan-to-value ratio was reduced below eighty percent, at which time
the PMI was no longer beneficial or necessary. Moreover, it is the purchase of the residence that is
the basis of Bennett's complaint.

 The White court's opinion makes no reference to Flenniken, and the cases are not
easily reconcilable. Compare White, 995 S.W.2d at 801 (servicing agent's collection of PMI
premiums for holder of note and deed of trust not service assumer of note and deed of trust "sought
to purchase"), with Flenniken, 661 S.W.2d at 707 (purchaser of residence entitled to consumer status
as to all parties "who sought to enjoy the benefits" of transaction, including lender). White, however,
relies on Munn for the proposition that "goods or services must be an objective of the transaction,
not merely incidental to it." White, 995 S.W.2d at 801 (citing Munn, 804 F.2d at 865). The Munn
court concluded that Flenniken "represents the category of cases in which a loan is connected to the
purchase of a good [a residence], which is the objective of the transaction." Id. Similarly, Bennett's
objective was the purchase of a residence. Bennett executed a note and deed of trust incidental to 
the purchase, and Weyerhaeuser, the original lender, required PMI as a condition of the financing. 
Although the loan by itself was not a purchase of goods or services, it was incidental to the purchase
of the residence--a good. See id. (citing Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 175 (Tex.
1980)). As in Munn, Bennett's objective was to purchase the residence, and by virtue of becoming
holders of her loan, appellees became connected to Bennett's transaction and subject to the DTPA's
provisions. See Cameron, 618 S.W.2d at 541 ("The Act is designed to protect consumers from any
deceptive trade practice made in connection with the purchase or lease of any goods or services.");
see also Munn, 804 F.2d at 865. Because the loan, with its requirement of PMI, was connected to
the purchase of a good, we hold that Bennett is a consumer.

 We now turn to Bennett's claim of unconscionable conduct. The DTPA defines an
"unconscionable action or course of action" as one which "to a consumer's detriment, takes
advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly
unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). To prove an unconscionable action or
course of action, Bennett must show that appellees took advantage of her lack of knowledge and
"'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'"
Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 677 (Tex. 1998) (quoting Chastain v. Koonce,
700 S.W.2d 579, 584 (Tex. 1985)). The relevant inquiry examines the entire transaction, not only
appellees' intent. Chastain, 700 S.W.2d at 583.

 Bennett contends that Bank United's policies provided the opportunity for Bennett
to cease paying PMI once she achieved twenty percent equity in her home, and appellees' refusal,
after Bennett's request to discontinue the PMI requirement, was unconscionable. Appellees argue
that there is no evidence of unconscionability, and that Bennett has demonstrated no harm because
First Boston Mortgage was under no obligation to cancel the PMI. Appellees committed no
"glaringly noticeable, flagrant, complete and unmitigated" action against Bennett. Morris, 981
S.W.2d at 677. First, we note that the deed of trust executed by Bennett provides for PMI premium
reimbursement "until the Note is paid in full." Second, although Bank United expressed that it had
a policy that may permit the canceling of a mortgagor's requirement to pay the PMI premiums, this
policy had no effect on Bennett because it is undisputed that First Boston Mortgage held the
mortgage, and its policies were to the contrary. Finally, the practice of requiring a mortgagor to pay
PMI premiums for the lender has long been used in the mortgage industry, and both Federal National
Mortgage Association ("Fannie Mae") and Federal National Home Loan Mortgage Corporation
("Freddie Mac") require PMI when the loan-to-value ratio is greater than eighty percent before they
will purchase a mortgage on the secondary market. We hold that no unconscionable action occurred.

 Bennett's final argument concerning the DTPA is that appellees failed to provide her
with written notice of her possible right to cancel the PMI and cease making the payments. See Tex.
Ins. Code Ann. art. 21.50, § 1B(a) (West Supp. 2003). (6) Bennett argues that appellees failed to give
her statutory notification of the possibility of cancelling the PMI. Id. Bennett alleges that she
communicated with Bank United inquiring about cancellation of the PMI in September 1998 without
any prompting from appellees.

 The failure to "disclose any matter required by law to be disclosed, including a failure
to make disclosure in accordance with another provision of [the insurance] code" constitutes
misrepresenting an insurance policy. (7) Id. art. 21.21, § 4(11)(e) (West Supp. 2003). Bennett contends
that such a failure is actionable under section 17.50 of the DTPA. See Tex. Bus. & Com. Code Ann.
§ 17.50(a)(4) (consumer may maintain action where "the use or employment by any person of an act
or practice in violation of Article 21.21, Insurance Code" constitutes "a producing cause of economic
damages or damages for mental anguish"). Appellees conceded, for purposes of their motion for
summary judgment, that "the alleged failure to notify will assumed to be true." Appellees also argue
on appeal and in their motion for summary judgment, that even if Bennett is held to be a consumer,
appellees were "still under no obligation to terminate the PMI [and] [t]herefore, Bennett has not been
damaged," by the lack of an article 21.50 notice of a "possibility."

 Bennett argues that appellees' article 21.50 issue "stands unchallenged" and,
therefore, she "is entitled to attempt to prove her claim and recover not only damages, but an
injunction." In her motion for summary judgment, Bennett argued that appellees' failure to provide
the article 21.50 notification was a breach of their fiduciary duty as to Bennett's escrow account,
from which Bank United debited the unnecessary PMI premium of $75.89. This action, Bennett
argued, was contrary to her wishes. However, Bennett alleged no specific damages with regard to
the article 21.50 violation. Rather, she argued that "[s]uch failure constituted an overtly unlawful
act thus constituting a conspiracy between [appellees] to deprive [her of] notice."

 In the deed of trust, Bennett expressly agreed to pay the PMI premiums "until the
Note is paid in full." Because she expressly agreed to pay PMI premiums as they became due and
payable, she could suffer no injury from having to live up to her part of the bargain. See White, 995
S.W.2d at 801. We agree with the White court that "when a mortgagor and mortgagee contract for
the mortgagor to pay PMI premiums for the life of the loan, even if not 'necessary,' there is no
deceptive practice as a matter of law. The parties are free to contract for such insurance . . . ." Id.
at 800. Therefore, we hold that Bank United and First Boston Mortgage did not act unconscionably,
and we overrule Bennett's first issue.


Bennett's Third-Party-Beneficiary Status

 By her second issue, Bennett argues that she was a third-party beneficiary to the
insurance contract, entitling her to recover for the wrongful payment of PMI premiums from her
escrow account. Appellees contend that this is not a breach-of-contract action and that Bennett is
not seeking to enforce the PMI; therefore, her third-party-beneficiary argument is unavailing.

 The fact that a person might receive an incidental benefit from a contract to which
she is not a party does not give her a right of action to enforce the contract. MCI Telecomm. Corp.
v. Texas Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999). A third party may recover on a contract
made between other parties only if the parties entered into the contract directly for the third party's
benefit. Id. To qualify as one for whose benefit the contract was made, the third party must show
that she is either a donee or creditor beneficiary of, and not one who is benefited only incidentally
by the performance of the contract. Id. In determining whether a third party can enforce a contract,
the intention of the contracting parties is controlling. Id. A court will not create a third-party-beneficiary contract by implication. Id. The intention to contract or confer a direct benefit to a third
party must be clearly and fully spelled out, or enforcement by the third party must be denied. Id. 
Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears"
that they intended a third party to benefit from the contract. Id.

 Bennett's argument fails for two reasons: (1) Bennett is incidently not directly
benefited by the PMI and (2) Bennett is not seeking to enforce the PMI contract provision. First,
Bennett is not an intended beneficiary of the PMI, although she may have initially and incidently
benefited from the insurance. The record indicates that Weyerhaeuser entered into the insurance
contract with MGIC for Weyerhaeuser's benefit not Bennett's, and appellees are the subsequent
direct beneficiaries of the insurance contract. Although the insurance contract is not in the record,
no party alleges that the contract clearly spells out a direct benefit to Bennett.

 Second, Bennett is not claiming that she is a third-party beneficiary in order to enforce
the PMI contract. Rather, she is claiming third-party-beneficiary status in order to achieve standing
to sue for violations of the DTPA. Bennett relies on Palma v. Verex Assurance, Inc. for this
proposition. 79 F.3d 1453 (5th Cir. 1996). In Palma, Palma received a loan to purchase a
condominium, and the lender required PMI, which Palma paid. Id. at 1454. Palma defaulted on the
mortgage and the mortgage holder foreclosed and demanded the deficiency. Id. at 1454-55. Palma
filed suit against the private mortgage insurer, alleging that pursuit of the deficiency violated the
terms of the mortgage insurance policy. Id. at 1455. As to the question of whether the insurance
contract benefited Palma, the court, interpreting the contract language, held that it did. Id. at 1458. 
Bennett's case is distinguishable because she presents no allegations that the contract language in
any way indicates that the contract is to her benefit. Instead, Bennett contends that when the loan-to-value ratio was greater than eighty percent, the PMI benefited her in the event of her death and the
sale of her home. Moreover, while the Palma court was able to examine the insurance contract,
appellees' insurance contract is not part of the record for our review. Therefore, the presumption
prevails that Weyerhaeuser and MGIC contracted for their benefit alone (and subsequently the
benefit of Weyerhaeuser's successors) and Bennett's claim fails. We overrule Bennett's second
issue.


Texas Insurance Code Violation

 By her third issue, Bennett argues that appellees are engaged in the business of
insurance and as such have violated insurance code article 21.21-8 by engaging in unfair
discrimination. See Tex. Ins. Code Ann. art. 21.21-8 (West Supp. 2003). Specifically, Bennett
contends that appellees, in collecting the PMI premiums, are acting as MGIC's agent, as defined in
article 21.02 of the insurance code. See id. art. 21.02 (West Supp. 2003). Therefore, as an agent,
appellees are engaging in the practice of insurance and conducting discriminating practices by
requiring Bennett to pay her contractually agreed-to premiums while it waives these payments for
similarly-situated borrowers. Appellees argue, inter alia, that they are not engaged in the business
of insurance and, therefore, are not an agent of MGIC. Moreover, appellees argue that Bennett is
not a policyholder, and thus she cannot maintain an action under article 21.21. We hold that Bennett
is not a policyholder and that she may not bring an action under article 21.21, and appellees are not
agents for MGIC.

 Weyerhaeuser obtained the PMI policy from MGIC, requiring Bennett to reimburse
Weyerhaeuser for the premium. (8) When appellees, in turn, each became holders of Bennett's loan,
they each became the policyholder, and Bank United continued to collect Bennett's mortgage
payment, which included an amount to reimburse appellees for the PMI premium they paid to MGIC. 
Therefore, appellees are not acting as agents for MGIC because they do not "receive, or collect, or
transmit any premium of insurance . . . or do or perform any other act or thing in the making or
consummating of any contract of insurance for or with any such insurance company other than for
himself." Id. Weyerhaeuser purchased the policy to protect itself in the event Bennett defaulted on
the mortgage. Weyerhaeuser did not act as an agent for MGIC in providing the policy for Bennett
because Bennett is not the policyholder. Moreover, because she is not a policyholder, Bennett does
not have standing to pursue the antidiscrimination provisions of insurance code article 21.21-8. 
Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 150 (Tex. 1994) (claims for unfair settlement practices,
under article 21.21, could be brought only by policyholders); In re Valetutto, 976 S.W.2d 893, 895
(Tex. App.--Austin 1998, no pet.) (nonpolicyholders do not have standing to sue under article
21.21-8). For all these reasons, we overrule Bennett's third issue.


CONCLUSION


 Having overruled all of Bennett's issues, we affirm the district court's grant of
summary judgment for appellees. 



 __________________________________________

 Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel 

Affirmed

Filed: July 11, 2003

1. Bennett and her then husband, Tony Lee Bennett, contracted with Weyerhaeuser. The two
divorced before Bennett filed this action, and only Eileen Bennett is a party.
2. Appellees assert that private mortgage insurance ("PMI") allows a less-qualified purchaser
to secure a larger loan than the purchaser would have been able to afford. "Lenders often require
[PMI] when making a residential mortgage loan that exceeds eighty percent (80%) of the loan-to-value ratio." "PMI insures the mortgagee for a certain percentage of the loan against any deficiency
resulting from a borrower's default and thus makes the loan less risky" for the lender. PMI is not
mandated by federal or state law. However, the Federal National Mortgage Association ("Fannie
Mae") and the Federal National Home Loan Mortgage Corporation ("Freddie Mac") require PMI as
a precondition for the purchase of the loans by these entities in the secondary-mortgage market. For
a thorough discussion of the rationale behind PMI, see White v. Mellon Mortgage Co., 995 S.W.2d
795, 797 (Tex. App.--Tyler 1999, no pet.).
3. Bennett argues that once the loan-to-value ratio falls below eighty percent, PMI is no longer
necessary. She cites Fannie Mae and Freddie Mac "guidelines," which provide that a loan servicer
must approve a mortgagor's written request to cancel PMI if the mortgagor has a satisfactory
payment record that is never more than thirty days delinquent in a twelve-month period that precedes
the request, and an unpaid balance of the mortgage is not greater than eighty percent of the property's
value. Appellees respond that the guidelines do not mandate that it discontinue requiring PMI when
the loan-to-value ratio is less than eighty percent.
4. As a basis of its refusal to cancel Bennett's PMI requirement, First Boston Mortgage cites
section 4.15 of "Seller's Warranties and Servicing Agreement." Section 4.15 states, in part:


The Company shall not take any action that would result in loss of coverage
under any applicable [PMI] Policy or any loss which, but for the actions of the
Company, would have been covered thereunder or to the cancellation or refusal
to renew any such [PMI] Policy, which is in effect at the date of the initial
issuance of the Certificates and is required to be kept in force hereunder . . . .
5. The plaintiff need not have purchased the goods or services directly from the defendant. 
"To accept the construction . . . that only direct purchasers can be consumers, would be to read
additional or different language into the DTPA, in contravention of the Act's mandate of liberal
construction. The legislature could easily have drafted such a restriction into the definition of
'consumer,' for example, by use of the words 'purchaser or lessee,' but did not do so." Kennedy v.
Sale, 689 S.W.2d 890, 892 (Tex. 1985) (employee who received healthcare benefits from employer-selected plan was consumer as to healthcare insurance agent).
6. The insurance code provides, in pertinent part:


A lender that requires a borrower to purchase mortgage guaranty insurance shall
provide annually to the borrower a copy of the following written notice printed
in at least 10-point bold-faced type:


"NOTICE OF RIGHT TO CANCEL PRIVATE MORTGAGE INSURANCE:
If you currently pay private mortgage insurance premiums, you may have the
right to cancel the insurance and cease paying premiums. This would permit you
to make a lower total monthly mortgage payment and to possibly receive a refund
of any unearned premiums on the policy. In most cases, you have the right to
cancel private mortgage insurance if the principal balance of your loan is 80
percent or less of the current fair market appraised value of your home. If you
want to learn whether you are eligible to cancel this insurance, please contact us
at (address and telephone number of lender) or the Texas Department of
Insurance consumer help line at (the appropriate toll-free telephone number)."


Tex. Ins. Code Ann. art. 21.50, § 1B(a) (West Supp. 2003).
7. We presume without deciding that the use of "disclose" and "disclosure" in article 21.21,
§ 4(11)(e) is the same as "notice" in article 21.50. Compare Tex. Ins. Code Ann. art. 21.21,
§ 4(11)(e) (West Supp 2003), with Tex. Ins. Code Ann. art. 21.50, § 1B (West Supp. 2003).
8. The Premium Payment Authorization form stated that:


For valuable consideration, the undersigned [Bennett and her former husband]
agree that Weyerhaeuser [] mortgagee, may at any time during the mortgage
term, and in its discretion . . . pay the premiums due by reason thereof, and
require repayment [by] the undersigned of such amounts as are advanced by said
mortgagee. In the event [of] failure by the undersigned to repay said amounts to
said mortgagee, such failure shall be considered a default . . . ."